Kirk **MICHAUX** et al., d/b/a **Treehouse Apartments,** Appellants,

v.

Ann **KOEBIG** et al., Appellees.

No. 12572.

Court of Civil Appeals of Texas, Austin.

Aug. 10, 1977.

Rehearing Denied Sept. 7, 1977.

Duane F. Emmert, McGinnis, Lochridge & Kilgore, Austin, for appellants.

Andrew Gary, Morgan & Gary, San Marcos, for appellees.

O'QUINN, Justice.

Appellees, who were plaintiffs below, brought this lawsuit in January of 1975 as former tenants of the Treehouse Apartments in San Marcos, complaining that in August of 1974 they were wrongfully excluded from their apartment by an implied threat of criminal complaint and that their security deposits, in the sum of $90, were wrongfully withheld by the landlords.[1]

The tenants sought judgment for $237 representing one month's rent, plus $300 as triple the security deposits and $100 statutory penalty, together with damages in the sum of $250 plus $750 as attorney's fees, a total of about $1,640.

The cause was tried before the district court without a jury in June of 1976, after which the court rendered judgment for the tenants in the sum of $1,326, consisting of $90 for security deposits, $270 as a sum treble the deposits, $100 as statutory penalty, $116 for unused rents, and $750 as attorney's fees. The landlords have appealed and bring seven points of error under which they deny wrongful eviction of the tenants, refute the claims of willful exclusion or threat of criminal prosecution, and deny willful withholding of the security deposits.

We will reverse the judgment of the trial court and render judgment that the tenants take nothing by their suit and direct appellants to return the amount of the tenants' deposits, in the sum of $90, which the landlords tendered without success after learning the forwarding address of the tenants.

█ The trial court filed no findings of fact and conclusions of law and none was requested. We examine the record under the established rule that an appellate court must affirm the judgment of the trial court if it can be upheld on any legal theory that finds support in the evidence. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968); *Longhorn Flying Club, Inc. v. Dragoo*, 464 S.W.2d 189, 191–2 (Tex.Civ.App. Austin 1971, writ ref'd n.r.e.); *In Interest of Stuart*, 544 S.W.2d 821, 824 (Tex.Civ.App. Tyler 1976, writ ref'd n.r.e.); *Poteet v. Winter Garden Production Credit Ass'n*, 546 S.W.2d 650, 652 (Tex.Civ.App. El Paso 1977, writ ref'd n.r.e.).

1. Appellees are Ann Koebig and Liz Ennis; appellants, defendants below, are Kirk Michaux and Don Weedon, doing business as Treehouse Apartments, located on LBJ Street in San Marcos. The record indicates that at the time of appeal the apartment complex was under new ownership.

The facts giving rise to this action are that in late summer of 1974 the appellee tenants were asked to vacate their apartment. The following note from the manager of the apartment complex was placed on appellees' apartment door: "Because of disorderly conduct in and on a public place, according to Penal Code 4201 of the Revised Civil [*sic*] Statute of Texas, you are asked to vacate the premises within three (3) days."

The request to vacate apparently was the result of the tenants' failure repeatedly to abide by the landlords' parking policy and regulations, as to assigned parking spaces for tenants only, and the result of a verbal argument in the parking area between one of the appellees and the manager of the apartment complex, growing out of parking violations by the tenants.

In response to the written request, the tenants vacated the apartment without protest and in accord with notice from the apartment manager. The vacated apartment was left in an appropriately proper condition to warrant return of the security deposits of $90, which at the time of suit some four months later, had not been returned as a security deposit.

The tenants left no official written notice of their forwarding address, as required by statute. It is the contention of appellee tenants that the printed addresses on their rental checks were sufficient written notice of the forwarding addresses for refund of the security deposit to be a landlord obligation.

The applicable statute is Tex.Rev.Civ. Stat.Ann. art. 5236e, sec. 2(a), sec. 4(a), sec. 4(c), sec. 6(a) (1973).

Section 2(a) reads:

"*Security deposits must be refunded by the landlord to the tenant within 30 days after the tenant surrenders the premises.* A tenant shall give advance notice of surrender as may be required by the rental agreement. However, advance notice may not be a condition for refund unless the requirement of advance notice is underlined or printed in conspicuous, bold print in the rental agreement." (Emphasis supplied)

Section 4(a) reads:

"A landlord who in bad faith retains a security deposit in violation of this Act is liable for $100 plus treble the amount of that portion of the deposit which was wrongfully withheld from the tenant, and shall be liable for reasonable attorneys fees in a lawsuit to recover the security deposit."

Section 4(c) reads:

"In any court action brought by a tenant under this Act, the landlord bears the burden of proving that his retention of the security deposit or any portion thereof was reasonable. *In this court action the landlord is not liable for the penalty, treble damages, or attorneys fees referred to in Subsections (a) and (b) of this section unless the landlord is found to have acted in bad faith.* Failure to return a security deposit within 30 days or failure to provide a written description and itemization of deductions within 30 days is prima facie evidence and a presumption that the landlord acted in bad faith." (Emphasis supplied)

Section 6(a) reads:

"The tenant *shall* furnish the landlord with a written copy of the tenant's forwarding address *for purposes of security deposit refunding.* A tenant's right to security deposit refund and description of damages and charges is never forfeited for mere failure to furnish a forwarding address to the landlord. *Notwithstanding any other provision of this Act, a landlord is not obligated to return the security deposit or furnish a written description of damages and charges until the tenant has furnished the forwarding address.*" (Emphasis supplied)

■ The statute makes clear that a written copy of the tenant's forwarding address is to be furnished to the landlord "for purposes of security deposit refunding." Until this obligation is met by the tenant, the landlord is under no obligation to refund the security deposit.

■ Since Article 5236e provides for award of attorney's fees, it is penal in nature. Such statutory provisions allowing for collection of attorney's fees are in derogation of the common law and must be subject to strict construction. *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893 (Tex. 1962); *Knebel v. Capital National Bank in Austin,* 518 S.W.2d 795 (Tex.1974); *King Optical v. Automatic Data Processing of Dallas, Inc.,* 542 S.W.2d 213 (Tex.Civ.App. Waco 1976, writ ref'd n.r.e.).

■ The printed address on a check given for rent is not sufficient compliance to discharge the tenant's initial obligation as set out in the statute. This obligation must be met before the obligation shifts to the landlord. A rental check is tendered the landlord for the purpose of paying rent, not to provide a written copy of a forwarding address "for purposes of security deposit refunding."

In addition, it is obvious that rental checks are not retained by landlords as permanent business records but instead are deposited in a bank for payment, and eventually are returned to the tenants at the conclusion of the negotiable instrument process.

■ The tenants did not discharge their obligation. The landlords were not, therefore, under the statutory obligation to return the security deposit. The landlords met their burden of proof as required by statute indicating that the retention of the security deposit was reasonable.

The landlords, being under no obligation to return the security deposit until furnished by the tenants with a written copy of the forwarding address, did not retain the security deposit in bad faith. The landlords had no liability to appellees for the penalty, treble damages, or attorney's fees awarded under Tex.Rev.Civ.Stat.Ann. art. 5236e, sec. 4(a) (1973) in the judgment rendered by the trial court.

We agree with appellants' contentions that as landlords they did not act in bad faith in withholding the security deposit; that since the evidence indicated the tenants failed to discharge their statutory obligation, the landlord appellants rebutted the statutory presumption of bad faith; and that since the landlord appellants were not in violation of the security deposits provisions of Article 5236e, assessment of statutory treble damages and penalty was error.

Appellants raise additional points under which they claim that the tenants were neither willfully excluded nor threatened with criminal prosecution. Appellees alleged each of these contentions in the original trial petition.

The "willful exclusion of tenant" is described in Tex.Rev.Civ.Stat.Ann. art. 5236c, sec. 2 (1973):

"It shall be unlawful for a landlord or his agent to willfully exclude a tenant from the tenant's premises in any manner except by judicial process. *Willful exclusion shall mean preventing the tenant from entering into the premises with intent to deprive the tenant of such entry.* Provided, however, a landlord or his agent shall not be prevented from removing the contents of the premises when the tenant has abandoned the premises or from changing door locks when the tenant's rentals are in fact delinquent in whole or in part. When such door lock is changed under such circumstances, a written notice shall be left on the tenant's front door describing where the new key may be obtained at any hour and describing the name of the individual who will provide the tenant with such key; and such key shall be provided regardless of whether the tenant pays any delinquent rentals." (Emphasis supplied)

If there had been a willful exclusion of the tenants as detailed in Article 5236c, section 4 of the statute provides:

"Upon violation of this Article by the landlord or his agent, the tenant may recover possession or terminate the rental agreement; and, in either case, the tenant may recover actual damages, plus one month's rent, plus reasonable attorneys fees, less any delinquent rentals or other sums for which the tenant is liable."

■ The canon of strict construction should be applied. It is noted that:

"Much lip-service, of course, has been given to the canon that a statute which imposes a penalty should be 'strictly' construed. *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex.1962). But this canon is simply a guide to be used when resort to it furthers the legislative purpose. The cardinal rule of construction which, significantly, has been expressly adopted by the legislature, is that 'the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy. Tex.Rev.Civ.Stat.Ann. art. 10(6) (1969).'" *O. R. Mitchell Motors, Inc. v. Bell*, 528 S.W.2d 856, 859 (Tex.Civ.App. San Antonio 1975, writ ref'd n.r.e.).

■ The purpose of Article 5236c is to deprive landlords of certain self-help devices. See Wallenstein, *Property*, 28 Sw. L.J. 27, 59 (1974).

■ Article 5236c is concerned with actual physical denial of a tenant's right of entry, as particularly exemplified by the changing of door locks, or constructive denial of entry or physical use of an apartment by interruption of utility service as prohibited by Article 5236c, sec. (1) (1973).

In the present case there was no physical exclusion. The landlords' only act was to post on the appellees' door a request that they vacate the premises.

It is noted that section 9 of the tenants' apartment rental contract reads:

"RULES AND REGULATIONS. Resident, his family, and guests will comply with all written rules and regulations furnished to the resident(s). . . . Owner reserves the right to control the method, manner, and time of parking in parking spaces . . . Resident agrees that the conduct of himself, his family, and guests shall never be disorderly, boisterous or unlawful; and shall not disturb the rights, comforts, or conveniences of other persons in the apartment complex. . . ."

There is evidence that tenant appellees on occasion violated the rules and regulations concerning "parking in parking spaces." There is evidence that the tenants were on occasion disorderly.

Section 16 of the apartment rental contract provides in part:

"DEFAULT BY RESIDENT. . . . if resident or the other occupants or guests of his apartment materially and/or repeatedly violate this contract or applicable state and local laws . . . then owner or owner's representative may terminate resident's right of occupancy by giving resident at least three days' notice in writing . . ."

The record does not disclose willful exclusion of the tenants from their apartment by the landlord. There was only a written notice of the termination of the residents' rights of occupancy.

In the trial court judgment all the sums of money awarded dealt with the remedies of Article 5236e concerning bad faith retention of security deposits, except the award of $116.00 for unused rents. There was no award of "actual damages, plus one month's rent, plus reasonable attorneys fees, less any delinquent rentals or other sums for which the tenant is liable," as provided for in Article 5236c, sec. 4.

From the judgment itself we conclude that the sums awarded appellees were not based on willful exclusion.

■ Though appellants assign error in a finding that the landlords threatened the tenants with criminal prosecution, the record and the judgment reflect no such finding by the trial court. As stated earlier, the notice posted on tenants' door stated that "Because of disorderly conduct in and on a public place, according to Penal Code 42.01 of the Revised Civil [*sic*] Statutes of Texas, you are asked to vacate the premises within three (3) days."

Beyond the obvious confusion of penal and civil statutes, the reference to "Penal Code 42.01" in the written notice is not in the context a threat of criminal prosecution, but rather is a definitional reference to the meaning of "disorderly conduct" as defined in the statute.

Termination of occupancy rights was not based on violation of the criminal statute but on violation of section 9 of the rental contract as provided for by section 16 of the rental contract.

It appears that the written notice of termination of occupancy rights should have made reference to the apartment rental contract. Failure to do so, however, did not convert a definitional reference to a penal statute into a threat of criminal prosecution.

The record shows that the apartment manager referred to 42.01 of the Penal Code because it was set out in the "Texas Apartment Association Redbook," which is in the record as an exhibit. There was testimony by the apartment manager that she was following "Redbook" procedures.

■ The point of error concerning constructive eviction is important only in determining under what theory the award of $116.00 for unused rents was reached. Appellants contend the trial court committed error in finding the landlords liable for constructive eviction. There is nothing in the trial court judgment to indicate that there was a finding of liability for constructive eviction, except the award of the $116.00 for unused rents. We conclude that constructive eviction did not occur. In Texas the general requirements for constructive eviction have been set out in *Stillman v. Youmans*, 266 S.W.2d 913 (Tex.Civ.App. Galveston 1954, no writ), and in *Richker v. Georgandis*, 323 S.W.2d 90, 95–96 (Tex.Civ. App. Houston 1959, writ ref'd n.r.e.).

■ The requirements, stated in *Richker*, are repeated:

". . . 1. An intention on the part of the landlord that the tenant shall no longer enjoy the premises, which intention may be inferred from the circumstances proven; 2. A material act by the landlord or those acting for him or with his permission that substantially interferes with the use and enjoyment of the premises for the purpose for which they are let; 3. The act must permanently deprive the tenant of the use and enjoy-

ment of the premises; and 4. The tenant must abandon the premises within a reasonable time after the commission of the act." [Also see 35 Tex.Jur.2d *Landlord and Tenant*, sec. 69 (1962); Note, 7 Baylor L.Rev. 456 (1955); Jackson, *Constructive Eviction of a Tenant*, 13 Baylor L.Rev. 62 (1961)].

■ Under the facts in the present case the tenants moved out without protest following the posting of the notice requesting them to vacate. Beyond the towing away of cars improperly parked under the regulations of the apartment complex, there were no harassing incidents interfering with the peaceful possession of the premises by the tenants, and there was no disturbance of the tenants' enjoyment or beneficial use of the premises. Mere notice to quit, followed by peaceful vacation of the premises, is not sufficient to constitute a claim of constructive eviction. *Rust v. Eastex Oil Company, Inc.*, 511 S.W.2d 358, 361 (Tex.Civ.App. Texarkana 1974, no writ), quoting 49 Am.Jur.2d *Landlord & Tenant*, Sec. 305 (1970); *Edwards v. Blissard*, 440 S.W.2d 427, 431–432 (Tex.Civ.App. Texarkana 1969, writ ref'd n.r.e.); *Weissberger v. Brown-Bellows-Smith, Inc.*, 289 S.W.2d 813, 817 (Tex.Civ. App. Galveston 1956, writ ref'd n.r.e.); also see Jackson, *Constructive Eviction of a Tenant*, 13 Baylor L.Rev. 62, 67 (1961).

■ There is authority for the position that damages are not recoverable by the tenants when the lease is terminated for failure of the tenants to comply with the written agreement of rental. *Long v. Carter*, 455 S.W.2d 818 (Tex.Civ.App. Texarkana 1970, writ ref'd n.r.e.). There is evidence indicating that the tenants had been in violation of at least one and possibly two of the rules and regulations set out in section 9 of the rental contract. Section 16 of the same rental contract provided that such a violation could result in the termination of the residents' right of occupancy.

A second problem is to determine on what basis or evidence $116.00 for unused rents was arrived at by the court. The sum represents approximately one-half of a monthly rental. We have difficulty in as-

certaining the exact basis the trial court used to reach this damage determination.

Appellants suggest in their brief that the $116.00 damages must have been based on liability for wrongful eviction by threat of criminal prosecution. We have already determined that there was no willful exclusion as described by Article 5236c.

Appellants also state that the $116.00 unused rents award must have been based on a common law tort or contract theory.

Appellees in their brief state, "The award by the district court of $116.00 as 'unused rents' appears to be an assessment of the actual damages of tenants."

In their original petition appellees sought as damages $237.00 for one month's rent. We find no evidence in the record to support the award of $116.00 for unused rents, either through exhibit or testimony.

The tenants were asked to vacate on August 31, 1974, and they moved on September 1 or September 2, 1974. There is no testimony as to unused rent and no exhibit of any check representing prior payment of rent for September. The trial judge appears to have determined damages simply as approximately two weeks' rental.

We find no evidence upon which to base such award of the $116.00 for unused rents.

 We find no express authority for return of the security deposits in addition to statutory damages authorized by Article 5236e, section 4(a). Appellants tendered the security deposits after suit was filed, but the tenants, on advice of counsel, refused the tender apparently to avoid contention the tender was in full settlement of the cause of action. Appellants concede that the statute provides for return of the deposit itself, and they raise no point of error on this matter of statutory construction. We conclude that as a matter of equity the amount of the deposits should be returned to the tenants by the landlords.

The judgment of the trial court is reversed. We render judgment that appellees take nothing by their suit and direct that appellants return to appellees the full amount of the security deposits in the sum of $90.

Reversed and Rendered.