**Robert QUITTA and Dean Quitta, Appellants,**

v.

**David FOSSATI, et ux, Jeanie Fossati, Appellees.**

**No. 13–90–161–CV.**

Court of Appeals of Texas, Corpus Christi.

April 18, 1991.

Rehearing Overruled May 16, 1991.

638

O.F. Jones, III, Victoria, for appellants.

John Griffin, Jr., Houston, Marek & Griffin, Victoria, for appellees.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

## OPINION

SEERDEN, Justice.

This suit arose out of the lease of a house to David and Jeanie Fossati, the tenants, by Nancy Calhoun, one of the landlords. Appellants, Calhoun's successors in interest and co-landlords, filed suit seeking recovery of payments due under the lease. Appellees, the tenants, counterclaimed under the D.T.P.A. From a judgment in favor of the tenants, the landlords appeal. We reverse and remand.

Calhoun, Dean Quitta, and Sarah Blinker each originally owned an undivided one-third interest in the house. Calhoun took the responsibility for leasing the property on behalf of the three, and she alone had direct contact with appellees before the present written lease was signed. However, Calhoun died in a tragic accident in June 1988 during the period of the lease. Of the three original owners, Dean Quitta alone presently holds an interest in the property.[1]

The written lease provided for a six-month term starting on May 1, 1988, with monthly payments of $600.00. The lease included integration and merger clauses, and a handwritten clause providing that $300.00 of improvements could be made to the leasehold in lieu of a $300.00 deposit. In addition, appellees contend that a subsequent oral agreement with Calhoun modified the lease by allowing them to set off each month's entire lease payment by the cost of materials used in improvements either to the leasehold or to Calhoun's personal residence.[2]

Appellees made all lease payments in cash in May and June, while Calhoun was alive. After her death in June, they did not make the lease payment in July, but tendered receipts for materials used to improve the premises to Calhoun's administrator. He accepted the receipts as payment for rent. In August, appellees paid $600.00. No lease payments were made in September or October. During this period appellants repeatedly demanded that the lease payments be brought up to date. Although appellees informed them of the subsequent oral agreement they made with Calhoun, appellants nevertheless were skeptical of the existence or enforceability of the alleged oral agreement and payment as provided in the written lease agreement.

Appellees moved out under threat of eviction on October 15, 1988, two weeks before the end of the lease term. When they left, they had receipts of money spent on improvements totaling $1,608.57. They owed lease payments for three months, although there was some dispute about whether they owed payments for the last two weeks because they moved out under threat of eviction.

Thereafter appellants filed suit to enforce the written lease, and appellees counterclaimed under the D.T.P.A. After a

1. After Calhoun's death, Quitta acquired her interest in the property from Calhoun's estate by assuming Calhoun's share of the debt owed on the house. Quitta also subsequently acquired the interest of Blinker, her daughter-in-law.

2. According to David Fossati's testimony, the agreements with Calhoun to trade improvements for rent under the lease took place both before and after the written lease was signed and the Fossatis moved into the house. In addition, Fossati testified that each time an improvement was made the Fossatis secured Calhoun's approval to take the amount expended off the rent owed.

jury trial, the trial court entered judgment on the verdict denying appellants' claim and granting appellees relief on their D.T. P.A. claim based on appellants' failure to abide by the oral modification to the lease. From this judgment appellants bring eight points of error.

By their first point of error appellants complain that the trial court erred in refusing to allow the testimony of Gladys Steshko for impeachment purposes as a rebuttal witness, even though she was not designated as a party having knowledge of relevant facts in answer to appellees' interrogatories. The failure of a party to supplement answers to interrogatories under Texas Rules of Civil Procedure 166b(5) and 215(5) results in the automatic exclusion of testimony of an unidentified witness, unless the trial court finds good cause exists for allowing the witness to testify. *Gee v. Liberty Mutual Fire Insurance Co.,* 765 S.W.2d 394 (Tex.1989); *Morrow v. H.E.B.,* 714 S.W.2d 297 (Tex.1986); *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.,* 701 S.W.2d 243 (Tex.1985).

Rules 166b(5) and 215(5) apply to exclude rebuttal witnesses as well, unless good cause exists by virtue of the fact that their use could not be anticipated prior to trial and their exclusion would keep important testimony from the jury. *See Ramos v. Champlin Petroleum Co.,* 750 S.W.2d 873, 876 (Tex.App.—Corpus Christi 1988, writ denied); *Ellsworth v. Bishop Jewelry and Loan Co.,* 742 S.W.2d 533, 534 (Tex. App.—Dallas 1987, writ denied); *Gannett Outdoor Co. v. Kubeczka,* 710 S.W.2d 79, 84 (Tex.App.—Houston [14th Dist.] 1986, no writ). The burden of establishing good cause is upon the party offering the evidence. *Gee,* 765 S.W.2d at 395; *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987). In addition, whether good cause exists is within the sound discretion of the trial court, whose determination can only be set aside if that discretion was abused by the court's acting without reference to any guiding rules or principles. *Morrow,* 714 S.W.2d at 298; *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. de-*

*nied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

In the present case, appellees' counsel briefly mentioned to the jury during his opening statement that the Fossatis "never had a cross word with a landlord before. They *don't go around having problems with landlords.*" The subject of appellees' relations with other landlords did not come up again until appellants' counsel on cross-examination asked David Fossati about his relationship with his prior landlord, Gladys Steshko, with whom Fossati then testified that he had never had any problems. Appellants then sought to rebut this testimony with Steshko's testimony to a dispute that existed when the Fossatis had abandoned their prior lease suddenly without making the final rent payment. Appellants, therefore, predicate their claim of good cause to offer undisclosed rebuttal testimony on their surprise at opposing counsel's initial improper reference to the Fossatis' good relationships with prior landlords.

Even if appellants can claim surprise at the initial injection of prior landlord relations into the case, those relations are irrelevant to the present proceeding and, even though they should not have been mentioned at all by appellees' counsel, appellants themselves sought to further accentuate these matters by their cross-examination of Fossati. Under the present circumstances, we cannot say that the trial court abused its discretion in refusing to allow Steshko to testify or that such refusal would keep important testimony from the jury. Appellants' first point of error is overruled.

By their second point of error appellants complain that the trial court erred in allowing into evidence the testimony of Larry Tagliabue, on the theory that it was corroborative of a predeath statement of a deceased, which in fact was not corroborative but was only hearsay. The precise nature of this point is somewhat unclear. There is no requirement for the admissibility of Tagliabue's testimony that it be corroborative of other testimony in the case that might otherwise be excludable under the Texas

Dead Man's Statute, Tex.R.Civ.Evid. 601(b).

■ However, to the extent that appellants complain simply that Tagliabue's testimony was inadmissible hearsay, it is clear from the facts of the present case that the testimony concerning Calhoun's statements as agent for lease of the property concerning the terms of that lease was admissible under Tex.R.Civ.Evid. 801(e)(2)(D) as an admission of a party opponent. *See Cherokee Water Co. v. Forderhause*, 727 S.W.2d 605, 617 (Tex.App.—Texarkana 1987), *rev'd on other grounds*, 741 S.W.2d 377 (Tex. 1987); *Southmark Management Corp. v. Vick*, 692 S.W.2d 157, 160 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Appellants' second point of error is overruled.

■ By their third point of error appellants complain that the Dead Man's Statute precluded the Fossatis' testimony concerning their alleged oral agreement with Calhoun. The present version of the Texas Dead Man's Statute, Tex.R.Civ.Evid. 601(b), provides in pertinent part that:

> In actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any oral statement by the testator, intestate or ward, unless that testimony to the oral statement is corroborated or unless the witness is called at the trial to testify thereto by the opposite party; and, the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent based in whole or in part on such oral statement....

Texas courts construe the Dead Man's Statute narrowly. *See Lewis v. Foster*, 621 S.W.2d 400, 404 (Tex.1981); *Tramel v. Estate of Billings*, 699 S.W.2d 259, 262 (Tex. App.—San Antonio 1985, no writ). Its construction has not been extended beyond its plain meaning and is strictly limited to suits by or against "executors, administrators, or guardians," and "heirs or legal representatives." *See Cain v. Whitlock*, 741 S.W.2d 528, 530 (Tex.App.—Houston

[14th Dist.] 1987, no writ); *Tramel*, 699 S.W.2d at 262–63. In the present case, the appellants are neither heirs nor legal representatives of Calhoun, but derive their right from Dean Quitta's status as a co-owner of the leased property. The Dead Man's Statute, therefore, does not apply to prevent the Fossatis from testifying to their conversations with Calhoun concerning the modification.

■ Even assuming the Dead Man's Statute applies, however, if Calhoun's statements were properly corroborated, the Fossatis' testimony is admissible regardless of the Dead Man's Statute. *Parham v. Wilbon*, 746 S.W.2d 347, 350 (Tex.App.—Fort Worth 1988, no writ); *Cain*, 741 S.W.2d at 530. Corroborating evidence must tend to support some of the material allegations or issues which are raised by the pleadings and testified to by the witness whose evidence is sought to be corroborated. It may come from any other competent witness or other legal source, including documentary evidence. *Powers v. McDaniel*, 785 S.W.2d 915, 920 (Tex.App.—San Antonio 1990, writ denied); *Parham*, 746 S.W.2d at 350; *Bobbitt v. Bass*, 713 S.W.2d 217, 220 (Tex.App.—El Paso 1986, writ dism'd); *Tramel*, 699 S.W.2d at 262.

■ Corroborating evidence, however, need not be sufficient standing alone to support the verdict, but must tend to confirm and strengthen the testimony of the witness and show the probability of its truth. *Parham*, 746 S.W.2d at 350; *Bobbitt*, 713 S.W.2d at 220. It is sufficient, for instance, if the corroborating evidence shows conduct on the part of the deceased which is generally consistent with the testimony concerning the deceased's statements. *See Powers*, 785 S.W.2d at 920–21.

■ In the present case, the Fossatis alone testified directly to the existence and terms of the alleged oral modification of the lease. The only other significant evidence that the oral agreement existed was the testimony of Larry Tagliabue, Calhoun's brother, that at a time prior to the signing of the written lease he heard Calhoun state that the tenants "were going to

rent a house of hers and do some work in exchange for some rent." Appellants contend that Tagliabue's testimony shows only that there may have been some such agreement prior to the written lease, which would have been merged into the written lease and of no effect, but does not corroborate the alleged subsequent oral modification.

However, we find that Tagliabue's testimony may just as consistently show the likelihood of a later oral modification to the written lease. Calhoun's statement shows that the parties had discussed the possibility of trading work for rent and were generally agreeable to it, but it does not conclusively establish whether the terms of that agreement had already been made before the written lease, would be incorporated into that lease, or would be worked out at a later date. This discussion of the parties' general intent to trade work for rent, even though it occurred before the written lease was signed, is some evidence to support the tenants' contention that a specific agreement to trade the cost of improvements for rent was later made as an oral modification to the lease. Testimony by Tagliabue concerning Calhoun's prior discussion of this intention, therefore, is consistent with and tends to corroborate the Fossatis' testimony concerning Calhoun's later agreement to the oral modification. Appellants' third point of error is overruled.

By their fourth point of error appellants complain that the trial court erred in allowing testimony concerning the Fossatis' conversations with Calhoun, as being either hearsay or a violation of the parol evidence rule.

■ We note initially that testimony by appellees concerning their negotiation of the modification agreement with Calhoun was not hearsay, because the agreement to modify itself has legal significance without regard to the truth of the matters asserted. *See Sanders v. Worthington*, 382 S.W.2d 910, 915–16 (Tex.1964); *Thomas C. Cook, Inc. v. Rowhanian*, 774 S.W.2d 679, 685 (Tex.App.—El Paso 1989, writ denied); *Pool Co. v. Hydra–Rig, Inc.*, 626 S.W.2d 320, 323 (Tex.App.—Fort Worth 1981, no

writ); *Casey v. Western Oil and Gas, Inc.*, 611 S.W.2d 676, 680 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.); *Irving Lumber Co. v. Alltex Mortgage Co.*, 446 S.W.2d 64, 71 (Tex.Civ.App.—Dallas 1969), *affirmed*, 468 S.W.2d 341 (Tex.1971).

■ In addition, the parol evidence rule is not a rule of evidence but is a rule of substantive contract law. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958); *Boy Scouts of America v. Responsive Terminal Systems, Inc.*, 790 S.W.2d 738, 744 (Tex.App.—Dallas 1990, writ denied). Moreover, it does not apply to agreements made after the written agreement, nor does it prevent the written instrument from being later modified by the parties by oral agreement. *Robbins v. Warren*, 782 S.W.2d 509, 512 (Tex.App. —Houston [1st Dist.] 1989, no writ); *Oxford Development Co. v. Eppes*, 422 S.W.2d 583, 585 (Tex.Civ.App.—Corpus Christi 1967, no writ). The Fossatis' testimony about the subsequent oral modification is therefore not a violation of the parol evidence rule.

■ In addition, as we discussed above, testimony by Tagliabue about Calhoun's prior discussion of such a modification is some evidence at least that she was considering modification of the nature that she and appellees finally agreed to; it is thus also admissible to show the likelihood that the subsequent modification did in fact occur, and should not be considered merely evidence of a prior agreement barred by the parol evidence rule. Appellants' fourth point of error is overruled.

By their fifth point of error appellants complain that as a matter of law they proved their entitlement to $1,800 in past due rent plus interest, late charges and attorney's fees. Appellants complain by this point both that there is no evidence to support the tenants' claim that the oral modification allowed them to discharge their obligation by performing improvements in lieu of rent, and that, even if such an agreement existed and was binding, the tenants' receipts for the costs of improvements of $1,608.57 did not cover the entire $1,800 in past due rent.

In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ Appellants predicate their challenge to the oral modification on their prior points two through four complaining that the relevant testimony establishing the oral modification is hearsay, and that it violates the Dead Man's Statute and the parol evidence rule. We have already disposed of these complaints and found that testimony concerning the oral modification was proper and that it was not barred by any of these rules. We hold that there was some evidence to support the jury's finding that this oral modification existed and allowed the tenants to make improvements in lieu of rent.

Appellants also complain that, even if the oral modification was enforceable, they are still entitled as a matter of law to the balance of $191.43 in unpaid rent (the difference between the cost of improvements and the $1,800 remaining rent due on the six month lease of the house), plus a late charge, interest and attorney's fees. Appellees defended against the appellants' claims for the $300 in rent allegedly due for the latter half of October on the grounds that they had been effectively forced out under threat of eviction.

■ David Fossati testified that they moved out of the house because Quitta had told them that if they did not pay the rent in cash, he wanted them to leave and he would "get the sheriff to get [them] out"—i.e., evict them. Shortly after this conversation, the Fossatis turned their keys over to Quitta and moved out of the house on October 15, 1988, half a month before the end of the term of the lease. It appears that the Fossatis used this threat by Quitta to claim that they were relieved of the obligation to pay rent by virtue of a constructive eviction from the premises. The elements of a constructive eviction are: (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises, which intention may be inferred from the circumstances; (2) a material act by the landlord or those acting for him or with his permission that substantially interferes with the use and enjoyment of the premises for the purpose for which they are let; (3) the act must permanently deprive the tenant of the use and enjoyment of the premises; (4) the tenant must abandon the premises within a reasonable time after the commission of the act. *Downtown Realty, Inc. v. 509 Tremont Building, Inc.*, 748 S.W.2d 309, 311 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Metroplex Glass Center v. Vantage Properties*, 646 S.W.2d 263, 265 (Tex.App.—Dallas 1983, writ ref'd n.r. e.), *citing Stillman v. Youmans*, 266 S.W.2d 913 (Tex.Civ.App.—Galveston 1954, no writ); and *Michaux v. Koebig*, 555 S.W.2d 171, 177 (Tex.Civ.App.—Austin 1977, no writ).

■ However, our courts have repeatedly held that a mere notice to quit, followed by vacation of the premises by the tenant, does not constitute a constructive eviction, for there must be some additional feature, such as harassing incidents disturbing to the tenant's peaceful possession and occurring on the property; and, that if the tenant moves out without protest, there is no eviction. *Michaux*, 555 S.W.2d at 177; *Rust v. Eastex Oil Co.*, 511 S.W.2d 358, 361 (Tex.Civ.App.—Texarkana 1974, no writ); *Edwards v. Blissard*, 440 S.W.2d 427, 432 (Tex.Civ.App.—Texarkana 1969, writ ref'd n.r.e.); *Weissberger v. Brown–Bellows–Smith, Inc.*, 289 S.W.2d 813, 817 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.); 52 C.J.S. *Landlord and Tenant* § 458 (1968). In the present case, therefore, Quitta's demand for payment of the rent and threat to evict the Fossatis if the rent was not paid in cash, even if wrongful, did not constitute a constructive eviction

relieving the tenants of their obligation to pay rent. Appellants' fifth point of error is sustained.

By appellants' sixth point of error they complain that the trial court improperly entered judgment on appellees' D.T.P.A. counterclaim. We agree.

Appellants argue that the undisputed facts did not establish a D.T.P.A. violation. They cite a number of cases for the proposition that a mere breach of contract claim is not actionable under the Act. *La Sara Grain v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984); *Ashford Dev. Inc. v. USLife Real Estate Servs. Corp.,* 661 S.W.2d 933, 935 (Tex. 1983); *see also Dura–Wood Treating v. Century Forest Indus.,* 675 F.2d 745, 756 (5th Cir.), *cert. denied,* 459 U.S. 865, 103 S.Ct. 144, 74 L.Ed.2d 122 (1982). It therefore becomes critical to distinguish a mere breach of contract claim from a breach involving something more in the way of fraud or misrepresentation sufficient to invoke the D.T.P.A. *See Brooks Tarlton, Gilbert, Douglas & Kressler, Etc., v. U.S. Fire Ins.,* 832 F.2d 1358, 1373 (5th Cir. 1987); *Helms v. Southwestern Bell Tel. Co.,* 794 F.2d 188, 191 (5th Cir.1986). *Leal v. Furniture Barns Inc.,* 571 S.W.2d 864, 865 (Tex.1978) and *Group Hosp. v. One & Two Brookriver Center,* 704 S.W.2d 886, 889 (Tex.App.—Dallas 1986, no writ), illustrate this distinction.

In *Leal,* purchasers of furniture, the Leals, became delinquent on a layaway plan with Furniture Barn. Furniture Barn wrote a letter to the Leals stating that they would forfeit all past payments unless a payment was received by a certain date. The letter implied that the layaway agreement allowed forfeiture; however, no term in the agreement allowed it. The court held these acts constituted false statements of fact regarding a party's rights under the

agreement and, accordingly, a violation of § 17.46(b)(12).[3]

In *Group Hospital,* a landlord sued his tenant for breach of a lease agreement. The tenant counterclaimed under the D.T. P.A. alleging that the landlord falsely represented the lease terms and subsequent oral modifications of the lease, and that the oral modifications of the lease were unenforceable due to the Statute of Frauds and a lease clause prohibiting such modifications. The court of appeals held that the dispute involved nothing more than contract interpretation and affirmed a directed verdict against the tenant.

In summary, *Leal* holds that false statements of fact concerning a party's rights under an unambiguous contract are actionable under § 17.46(b)(12), while *Group Hospital* holds that disagreements over the interpretation of a contract with uncertain terms are not actionable under this section. The distinction between these two cases, and between a D.T.P.A. violation and a breach of contract claim, properly lies when an alternative interpretation of the contract is asserted, and the dispute arises out of the performance of the contract. In such a case the D.T.P.A. is not violated, and the legal rights of the parties are governed by traditional contract principles.[4] *See Gulf States Underwriters v. Wilson,* 753 S.W.2d 422, 430 (Tex.App.— Beaumont 1988, writ denied).

In the present case, appellants and appellees presented alternative interpretations of the lease agreement. Appellees' entire theory of recovery and defense was based on the existence of the oral modification to the lease and appellants' allegedly wrongful attempt to enforce the written agreement. Appellants' position, however, was that the subsequent oral modification of the contract did not exist, and if it did exist, that such testimony was barred by the parol evidence rule, the hearsay rule, the

---

3. Section 17.46(b)(12) defines a false, misleading, or deceptive act or practice as: "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Appellees' theory of the case most closely falls under this section.

4. Independently actionable conduct under the D.T.P.A. would clearly fall outside the scope of our holding here.

Deadman's Statute, and other rules of evidence, rendering the oral agreement unenforceable.

 Viewed in the light most favorable to appellees, the evidence showed that they made an unwritten agreement with Calhoun and that she died without telling her partners about it. Appellants simply sought performance of the written lease, while appellees sought to prove the existence and character of additional terms to the agreement. No evidence of overreaching or victimization, *see Group Hospital,* 704 S.W.2d at 889, or unconscionable acts, or a false misleading or deceptive act on the part of appellants, *see* § 17.44 and § 17.46(a) was admitted. Thus, this case merely involved traditional contract notions. *See Weitzel v. Barnes,* 691 S.W.2d 598 at 600 (Tex.1985). Appellants' sixth point of error is sustained.

Having determined that appellees were not entitled to maintain a cause of action under the D.T.P.A., we overrule their cross-point complaining of the trial court's refusal to award damages under the D.T.P.A. for the enhanced value of the property due to the improvements. In addition, we need not reach appellants' seventh point of error complaining that the damages awarded the Fossatis on their D.T.P.A. claim are excessive. *See* Tex.R.App.P. 90(a).

We reverse the judgment of the trial court, here render judgment that appellees take nothing on their D.T.P.A. claim, and remand this case to the trial court for calculation of the amount of damages owed by the Fossatis to the appellants as the balance of rent, late charges, interest and attorney's fees, in accordance with this opinion.

KEYS, J., not participating.