# Supreme Court of Texas

---

No. 22-0846

---

Westwood Motorcars, LLC,

*Petitioner*,

v.

Virtuolotry, LLC and Richard Boyd,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

---

**Argued February 20, 2024**

JUSTICE HUDDLE delivered the opinion of the Court.

A district-court jury found for the tenant in this case, awarding damages against the landlord and the landlord's manager for breach of contract and constructive eviction. But the court of appeals reversed and rendered a take-nothing judgment because the tenant—before the jury trial—withdrew its appeal of a justice court's award of possession to the landlord in a separate eviction suit and consented to the landlord's obtaining a writ of possession. That was error. The sole issue adjudicated in a justice-court eviction suit is immediate possession, and

a judgment adjudicating immediate possession does not bar or have any preclusive effect on a suit in district court for damages arising out of the same landlord–tenant relationship. We reverse and remand to the court of appeals for further proceedings.

## I. Background

Westwood Motorcars, LLC leased commercial property in Dallas to operate an automobile dealership. The lease provided that it would expire in 2013, but an addendum permitted Westwood to extend the lease for two additional terms of twenty-four months each. Westwood and its landlord agreed to extend the lease for the first twenty-four-month term, which would run through December 31, 2015.

In June 2015, ownership of the property changed hands and Virtuolotry, LLC became the new landlord. Two months later, Westwood sought to exercise its option to extend the lease for the second additional term. But Virtuolotry's lawyers said no, asserting that Westwood had breached the lease in numerous ways. Westwood's lawyers countered by detailing Westwood's position about why no default had occurred and demanding that Virtuolotry acknowledge Westwood's right to a second extension. Westwood asserts that, in the midst of this dispute, Virtuolotry and its manager, Richard Boyd, harassed Westwood at the premises. For example, Westwood claims that vendors were directed to "constantly" park trucks in front of Westwood's doors, which interfered with Westwood's ability to conduct business and prevented customers from taking test drives.

The parties sought different relief in different courts. Westwood sued Virtuolotry in district court, seeking a declaratory judgment that

2

it had not breached the lease and that it had properly extended the lease for another two years. Later, on December 31, 2015—the day the lease would end if not extended a second time—Virtuolotry sued in justice court to evict Westwood for unpaid rent, lease violations, and holding over unlawfully. The justice court ruled for Virtuolotry and awarded it "possession only." Westwood appealed the judgment to the county court at law. *See* TEX. CIV. PRAC. & REM. CODE § 51.001(a) (stating that parties can generally appeal justice-court judgments to the county court); TEX. R. CIV. P. 510.9 (describing the procedure for an appeal from a justice-court judgment in an eviction suit).

Westwood's trial de novo in county court was scheduled for March 24, 2016. A few weeks before the trial date, Westwood's lawyers again wrote Virtuolotry. The letter insisted that Westwood was not in default and had properly extended the lease. Yet it also notified Virtuolotry that Westwood would vacate the premises on March 31. Westwood formally withdrew its appeal in county court, so the de novo trial on Virtuolotry's eviction suit never occurred. Instead, the county court entered a "stipulate[d] and agree[d]" judgment ordering "that possession of the Premises is awarded" to Virtuolotry. Westwood fully vacated the property by March 25.

But Westwood pressed its pending suit in district court, adding claims for breach of contract (against Virtuolotry) and constructive eviction (against Virtuolotry and Boyd). That case proceeded to a jury trial. Westwood's principal, Igor Hajduch, testified that Westwood withdrew its appeal in the eviction suit "[b]ecause of constant harassment" by Virtuolotry and the expense of the litigation. He also

3

testified that the same day Westwood moved to dismiss the eviction-suit appeal, Boyd came into Westwood's showroom and demanded money, then later locked Westwood out of the premises without notice, destroyed its security system, and prevented it from making three customer deliveries. To access and remove its own inventory from the premises, Westwood was forced to obtain a writ of reentry, which allowed Westwood to move its cars off the premises to its principal's home.

The jury found that Virtuolotry breached the lease agreement, causing damages consisting of lost profits, lost benefit of the bargain, and a lost security deposit. It also found that Boyd constructively evicted[1] Westwood, causing damages in the form of relocation expenses, and it awarded exemplary damages against Boyd. Ultimately, the district court rendered judgment against Virtuolotry for $783,731 in damages (plus interest) and over $350,000 in attorney's fees, and

---

[1] The trial court submitted a claim for constructive eviction using elements taken from court of appeals opinions. *See, e.g.*, *Briargrove Shopping Ctr. Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 334 (Tex. App.—Houston [1st Dist.] 1982, no writ) (setting forth the elements of a claim for constructive eviction). Neither party objected that submission of this claim was improper, although Virtuolotry and Boyd objected that the accompanying instruction was incomplete, that the evidence conclusively negated the claim's essential elements, and that Boyd should not have been included in the question. Our Court has not expressly recognized constructive eviction as an affirmative claim for relief, nor have we addressed this claim's relationship, if any, with claims for wrongful eviction or breach of the covenant of quiet enjoyment. *Cf.* 49 AM. JUR. 2D *Landlord and Tenant* § 502 (2018) ("While some states may recognize a tort claim for wrongful eviction, other states do not recognize constructive eviction and breach of quiet enjoyment as separate claims . . . ." (footnote omitted)). Because it is not necessary to do so, we express no opinion on these issues today.

4

against Boyd for $23,331.37 in actual damages and $200,000 of (capped) exemplary damages.

Virtuolotry and Boyd appealed, raising ten issues. The court of appeals reversed and rendered a take-nothing judgment, relying solely on the theory that, by agreeing to the eviction-suit judgment in county court, Westwood "voluntarily abandoned the premises" and thus "extinguish[ed] any claim for damages." 684 S.W.3d 466, 469 (Tex. App.—Dallas 2022). The court of appeals reasoned that Westwood could not establish that it suffered any damages resulting from Virtuolotry's or Boyd's actions because Westwood "agreed to the issuance of [a] writ of possession to Virtuolotry and did not identify any act of Virtuolotry or Boyd as being the cause for its decision." *Id.* Moreover, according to the court of appeals, Westwood's "agree[ment] to the judgment in the county court case" amounted to "affirmatively representing Virtuolotry had the lawful right to possession." *Id.* And so, the court concluded, "[b]y admitting Virtuolotry had the right to possession," Westwood "effectively abandoned its constructive eviction claim" and was "precluded from recovering damages" for a breach-of-contract claim "premised on the issue of possession." *Id.*

Westwood moved for rehearing and for en banc reconsideration, both of which were denied. It then petitioned this Court for review, which we granted.

## II. Relevant law

Chapter 24 of the Texas Property Code grants justice courts "jurisdiction in eviction suits," including suits for forcible entry and

detainer (FED) and forcible detainer.[2]  TEX. PROP. CODE § 24.004(a).
Eviction suits are designed to provide "a summary, speedy, and
inexpensive remedy for the determination of who is entitled to
possession of the premises." *McGlothlin v. Kliebert*, 672 S.W.2d 231, 232
(Tex. 1984).  They generally culminate in a court's entry of a "writ of
possession," *see* TEX. PROP. CODE § 24.0061(a), on a timeline much faster
than ordinary civil suits proceed to judgment.  But as a consequence,
eviction suits are limited in scope and effect, with the "sole focus" being
"the right to immediate possession of real property."  *Shields Ltd. P'ship
v. Bradberry*, 526 S.W.3d 471, 478 (Tex. 2017); *see Marshall v. Hous.
Auth. of San Antonio*, 198 S.W.3d 782, 785 (Tex. 2006) ("The only issue
in a forcible detainer action is the right to actual possession of the
premises.").

As this Court has explained, an eviction suit in justice court is
"not exclusive, but cumulative, of any other remedy that a party may
have," and matters beyond "the justice court's limited subject matter
jurisdiction" may be brought in another "court of competent
jurisdiction."  *McGlothlin*, 672 S.W.2d at 233.  By rule and statute, the

---

[2] Though the terms "forcible detainer" and "forcible entry and detainer"
are sometimes used interchangeably, they are distinct legal actions governed
by separate statutory provisions.  *See* TEX. PROP. CODE §§ 24.001 (forcible
entry and detainer), 24.002 (forcible detainer).  Generally, forcible entry and
detainer occurs when a person enters the property of another "without legal
authority or by force and refuses to surrender possession on demand."  *Id.*
§ 24.001(a).  Forcible detainer occurs when a person whose initial entry was
lawful "refuses to surrender possession . . . on demand."  *Id.* § 24.002(a); *see
also* 41 TEX. JUR. 3D *Forcible Entry and Detainer* § 1 (2024) (describing the
differences between forcible detainer and forcible entry and detainer).  Both
are types of eviction suits filed in justice court, *see* TEX. PROP. CODE § 24.004(a),
and our analysis today applies equally to both.

eviction suit and its judgment have a limited effect on those related actions. Section 24.008 of the Property Code states that "[a]n eviction suit does not bar a suit for trespass, damages, waste, rent, or mesne profits." And Rule 510, which governs eviction cases, identifies "the right to actual possession" as the "[o]nly [i]ssue" in an eviction case and specifies that claims "not asserted because of this rule can be brought in a separate suit in a court of proper jurisdiction." TEX. R. CIV. P. 510.3(e). Although the justice court's judgment may be appealed to county court, "the county court has no greater jurisdiction than the justice court had." *Tellez v. Rodriguez*, 612 S.W.3d 707, 709 (Tex. App.—Houston [14th Dist.] 2020, no pet.).[3] That the justice court's judgment carries no preclusive effect in district court is underscored by the plain text of Section 31.004(a) of the Civil Practice and Remedies Code: "A judgment or a determination of fact or law in a proceeding in a lower trial court is not res judicata and is not a basis for estoppel by judgment in a proceeding in a district court . . . ."

Under this scheme, an eviction suit in justice court "may run concurrently with another action in another court" without issue—even if the two proceedings "overlap" and "the other action adjudicates matters that could result in a different determination of possession." *Kassim v. Carlisle Ints., Inc.*, 308 S.W.3d 537, 541 (Tex. App.—Dallas 2010, no pet.). That is because the justice court's judgment "is a determination only of the right to *immediate possession* and does not

---

[3] Westwood also would have had no right to an appeal beyond the county court: "A final judgment of a county court in an eviction suit may not be appealed on the issue of possession unless the premises in question are being used for residential purposes only." TEX. PROP. CODE § 24.007.

determine the *ultimate* rights of the parties to any other issue in controversy relating to the realty in question." *Id.* (quoting *Lopez v. Sulak*, 76 S.W.3d 597, 605 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.); *accord Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 235 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Our decision in *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909 (Tex. 2013), illustrates this system of overlapping jurisdiction. There we explained that a justice court's judgment in an FED suit is "a final determination only 'of the right to immediate possession;' it is not 'a final determination of whether the eviction is wrongful' or whether the tenant's continued possession was a trespass." *Id.* at 919 (quoting *Marshall*, 198 S.W.3d at 787). Consequently, "[t]he FED action and judgment do not bar a separate action for trespass or for wrongful eviction, and if it is determined in that action that the tenant lacked any legal interest or right of possession, the tenant at sufferance is a trespasser." *Id.* at 920. Similarly, we noted that an FED judgment is "not res judicata against a related claim for trespass to try title, and a party who loses possession in the FED action may still sue in district court to obtain adjudication of its title and its right to regain possession of the property." *Id.* at 919 (footnote omitted).

### III. Analysis

Westwood contends that the court of appeals erred by giving a judgment of possession from a court of limited jurisdiction preclusive effect over Westwood's claim for damages in district court. Virtuolotry and Boyd do not contest that the county court's judgment may not be given preclusive effect over the district-court action. They instead

8

defend the court of appeals' judgment by asserting that Westwood's voluntary agreement to cede possession and vacate the premises conclusively defeats its damages claims *as an evidentiary matter*. As we explain below, we agree with Westwood that the court of appeals reversibly erred.

### A. Agreeing to an award of immediate possession in an eviction suit does not concede an ultimate right to possession or abandon separate claims regarding possession.

The court of appeals erred by enlarging the legal significance of the agreed judgment in county court. "An agreed judgment should be construed in the same manner as a contract," *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000), and "our fundamental objective is to ascertain the parties' intent according to their chosen words," *Bay, Ltd. v. Mulvey*, 686 S.W.3d 401, 407 (Tex. 2024). Here, the agreed judgment states, in pertinent part:

> [Westwood] no longer wishes to appeal the decision of the Justice Court awarding possession of the property . . . . Thus, the Parties stipulate and agree, and it is, therefore ORDERED that possession of the Premises is awarded to [Virtuolotry]. It is further ORDERED that the Clerk of the Court issue a writ of possession to [Virtuolotry].

Nothing in this text demonstrates an intent by Westwood to abandon its claims for damages—indeed, there is no mention of other claims at all. Nor does Westwood concede that Virtuolotry was legally entitled to possession under the terms of the lease. The only express representation from Westwood is that it no longer wishes to challenge the justice court's award of possession to Virtuolotry.

9

To be sure, Westwood stipulated to a judgment awarding possession of the premises to Virtuolotry. But we cannot divorce this agreed judgment from its context: an appeal of a justice-court judgment in an eviction suit. Again, we have consistently described a judgment in an eviction suit as a final determination only of the right to immediate possession. *E.g.*, *Coinmach*, 417 S.W.3d at 919. Such a judgment is not, by contrast, a final determination of the parties' ultimate rights, the wrongfulness of the eviction, or any other question. And such a judgment does not have preclusive effect on a subsequent action in district court or bar a suit for damages. Against that backdrop, Westwood's agreement to entry of the county-court judgment cannot reflect assent to anything more than what that judgment resolves—i.e., who receives immediate possession of the property.

The court of appeals was therefore wrong to equate Westwood's agreeing "to the judgment in the county court case" with Westwood's "affirmatively representing Virtuolotry had the lawful right to possession." 684 S.W.3d at 469. Withdrawing an appeal from a justice court's award of immediate possession is not the same as conceding that an opponent has a legal right to ultimate possession, nor does it equate to abandonment of any other claim. Matters not within the limited subject matter of the eviction suit are addressed in another action in another court, even if those matters relate to possession. Here, Westwood continued to press its pending suit in district court, where it expressly asserted a lawful right to possession under the lease. The district-court action could—indeed, it did—result in a different determination about who was entitled to possession under the lease.

10

The court of appeals erred in discarding the district court's determination favoring Westwood on the ground that Westwood opted not to pursue its county-court appeal on the sole issue of immediate possession.[4]

### B. Some evidence supports the conclusion that Westwood's departure was not voluntary.

In response, Virtuolotry and Boyd contend that the court of appeals' analysis did not turn on the judgment's legal effect but the sufficiency of the evidence. For them, the "legally dispositive issue" in this case (and in the court of appeals' opinion) is "whether the tenant voluntarily abandoned the property." They contend that the court of appeals simply held that Westwood voluntarily abandoned the premises, which, in turn, conclusively showed that Virtuolotry and Boyd were not the cause of any damages. They urge us to affirm on similar legal-sufficiency grounds, but we decline to do so.

By their own framing, the linchpin of this argument is the voluntary nature of Westwood's departure. But when reviewing a legal-sufficiency challenge to a jury verdict, we view all evidence in the light most favorable to the verdict, and we overturn such a judgment only if there is a complete absence of evidence proving a vital fact, the rules of law or evidence bar the court from weighing the only evidence proving a vital fact, the evidence offered to prove a vital fact is no more

---

[4] In its reply brief, Westwood argues that, even if the agreed judgment in county court included express stipulations surrendering its right to ultimate possession or abandoning its district-court claims, the judgment still would not control the district-court action because parties may not enlarge a court's jurisdiction, even by agreement. But we need not address this argument as no such stipulations are present.

than a mere scintilla, or the evidence conclusively disproves the existence of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 810 (Tex. 2005).

As Virtuolotry and Boyd tell it, the record reflects only a voluntary choice to leave the premises as part of Westwood's broader strategic decision to move locations. In support, they cite the court of appeals' statement that Westwood could not establish causation because it "did not identify any act of Virtuolotry or Boyd as being the cause for its decision to abandon its appeal and agreement to vacate the Premises and award Virtuolotry possession of same." 684 S.W.3d at 469. And though they concede the agreed judgment lacks any preclusive effect, they submit that it has *evidentiary* significance: the agreement to surrender possession shows that Westwood left voluntarily and that any damages were not of Virtuolotry's or Boyd's making.

Although Westwood's decision to abandon its appeal and agree to entry of a judgment in the eviction suit may constitute *some* evidence that Westwood's departure was voluntary, it was not *conclusive* evidence. A key dispute at trial was whether Westwood departed the property and withdrew its appeal because of its own voluntary choice or Virtuolotry's and Boyd's bad conduct. Westwood argued to the jury that it left because of Virtuolotry's "harassment," while Virtuolotry and Boyd argued that there was "simply no causal relationship" and that Westwood departed for business reasons. The jury resolved this conflict in the evidence in Westwood's favor, and the record contains considerable evidence supporting its finding.

12

For example, the jury heard testimony that, when Virtuolotry became the landlord, vendors began to "constantly" obstruct Westwood's doors, which blocked customers from taking test drives and hampered Westwood's ability to conduct business. In its letter to Virtuolotry agreeing to vacate the premises, Westwood continued to assert that it had properly extended the lease, and the jury heard evidence that Westwood's later decision to withdraw its appeal of the eviction suit was not voluntary. Westwood's principal was asked at trial, "[W]hy did Westwood withdraw its notice of appeal?" He answered: Westwood did not want to stay there any longer "[b]ecause of constant harassment." Westwood further presented evidence that after informing Virtuolotry it would leave on (and had paid rent through) March 31, it was forced to leave earlier (and before it had obtained a new location to relocate its considerable inventory) due to Boyd's continuing harassment—specifically, his demanding money in the showroom, locking Westwood out of the property without notice, destroying Westwood's security system, and threatening, through his attorney, to have Westwood's principal arrested.

Focusing on Westwood's choice to agree to the county-court judgment, Virtuolotry and Boyd rely on our past instruction that a "legal eviction cannot be predicated upon the mere voluntary act" of the tenant. *Gibson v. Turner*, 294 S.W.2d 781, 789 (Tex. 1956) (quoting *Rancho Bonito Land & Live-Stock Co. v. North*, 45 S.W. 994, 996 (Tex. 1898)). Yet these older cases speak only to those acts that are truly "voluntary," which, by definition, are not those induced by coercion or harassment by others. *Voluntary*, BLACK'S LAW DICTIONARY (11th ed.

13

2019) ("Unconstrained by interference; not impelled by outside influence").

Likewise, Virtuolotry and Boyd cite multiple courts of appeals for the proposition that "a mere notice to quit, followed by vacation of the premises by the tenant, does not constitute a constructive eviction." *E.g.*, *Quitta v. Fossati*, 808 S.W.2d 636, 643 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied). But those constructive-eviction cases expressly recognize that evidence of "some additional feature, such as harassing incidents disturbing to the tenant's peaceful possession," can take a tenant's claim outside the realm of cases involving "a mere notice to quit." *Id.*

Such evidence exists here. Westwood presented extensive evidence of Virtuolotry's and Boyd's interference with Westwood's use of the premises, and its principal testified that Westwood left because of "constant harassment." This constitutes "some evidence, and therefore legally sufficient evidence," from which the jury rationally could have found that neither Westwood's departure nor its agreement to entry of the county-court judgment were voluntary. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016). Virtuolotry and Boyd's argument for affirmance therefore fails.[5]

---

[5] Virtuolotry and Boyd raised multiple other issues on appeal that the court of appeals did not reach. They suggest that, instead of remanding, we address their other rendition points based on the briefing in the court of appeals. We decline to do so in the first instance and express no opinion as to any other issue raised below. *See In re Troy S. Poe Tr.*, 646 S.W.3d 771, 780–81 (Tex. 2022).

14

## IV.  Conclusion

We reverse the court of appeals' judgment and remand to that court for consideration of the unaddressed issues presented on appeal.

_____
Rebeca A. Huddle
Justice

**OPINION DELIVERED:** May 17, 2024