Ken Wise, Justice, dissenting.
The Majority erroneously concludes that the trial court correctly disregarded the jury's finding in response to Question 3. In Question 3, the jury found that Mokaram and Choudhri agreed that the 2010 assignment was ineffective. The Majority concludes that Question 3 cannot be understood to have asked the jury whether Mokaram and Choudhri subsequently agreed to rescind the 2010 assignment, and dismisses the entirety of Mokaram's testimony. Because the evidence is legally sufficient to support the jury's answer to this question, I disagree with the Majority's interpretation and respectfully dissent.
It is undisputed that any prior oral agreement that the 2010 assignment was subject to a contingency or condition precedent would be unenforceable under the parol evidence rule. See David J. Sacks, P.C. v. Haden , 266 S.W.3d 447, 450 (Tex. 2008). The parol evidence rule does not, however, apply to subsequent agreements, which the Majority acknowledges. See, e.g. , First Bank v. Brumitt , 519 S.W.3d 95, 111 (Tex. 2017) ; Lakeway Co. v. Leon Howard, Inc. , 585 S.W.2d 660, 662 (Tex. 1979) (per curiam); see also Mortgage Co. of Am. v. McCord , 466 S.W.2d 868, 871 (Tex. Civ. App.-Houston [14th Dist.] 1971, writ ref'd n.r.e.) ("Extrinsic evidence may always be offered to show a new agreement or that an existing written contract has been changed, waived or abrogated in whole or in part."). Therefore, the fact that Mokaram and Choudhri may have discussed making their agreement subject to a contingency before executing the 2010 assignment documents does not automatically preclude a finding that an oral modification was made after they executed the documents. See Quitta v. Fossati , 808 S.W.2d 636, 642 (Tex. App.-Corpus Christi 1991, writ denied) (holding that evidence of discussions concerning modification of written agreement prior to execution was some evidence that oral modification subsequently agreed upon was being considered and "should not be considered merely evidence of a prior agreement barred by the parol evidence rule").
At trial, Mokaram explained that he and Choudhri agreed that Choudhri would give Mokaram a cashier's check for $750,000, and Mokaram would use the money to buy 50% of Latif's interests in ML Partnership and ML General (the ML entities). Once Mokaram obtained Latif's 50% interests, Mokaram and Choudhri would then divide the 50% interests between them (35% to Choudhri and 15% to Mokaram) so that Choudhri and Mokaram would become 50/50 partners. The jury also had before it the four documents that comprised the 2010 assignment. The documents provided that Mokaram's interests in the ML entities "shall be fully and completely transferred" to Choudhri "upon execution." The documents made no mention of any condition precedent or contingency.
*620 Mokaram also explained what happened after Latif refused to sell his interests to Mokaram:
Q. So, after Mr. Latif said, no, my question is: What did Mr. Choudhri agree with respect to the assignments and the transfer and the money?
A. That they were null and void, that they didn't exist, that there was no agreement.
Q. And after that, what did he agree to with respect to the money?
A. He took it. He accepted it back 'cause it was his funds, there was no sale. I didn't owe him money. I was very clear, here's your money back.
Q. Before he took it, what did he agree to, though?
A. He agree[d] that there was [sic] no assignments, there was no transfer of anything.
A reasonable and fair-minded jury hearing this evidence could have concluded that after Latif reneged on selling Mokaram his interests, Mokaram and Choudhri agreed to rescind the 2010 assignments and Mokaram returned Choudhri's money. See City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005) ("The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."). In reaching this conclusion, the jury could have reasoned that even though the 2010 assignments were effective upon execution, Mokaram could not sell to Choudhri interests that he had failed to obtain from Latif.
On appeal, the Majority echoes Choudhri's dismissive conclusion that Mokaram's testimony merely reflects the parties' understanding of the effect of a prior oral agreement on the 2010 assignment, and does not address Mokaram's testimony concerning a subsequent oral agreement. The Majority then holds that the trial court did not err by disregarding the jury's answer to Question 3 as immaterial because the jury's finding was legally barred by the parol evidence rule.
A trial court may disregard a jury finding only if it is unsupported by evidence-a condition not met in this case-or if the issue is immaterial. See C. & R. Transport, Inc. v. Campbell , 406 S.W.2d 191, 194 (Tex. 1966). A question is immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings. Se. Pipe Line Co. v. Tichacek , 997 S.W.2d 166, 172 (Tex. 1999) ; Spencer v. Eagle Star Ins. Co. of Am. , 876 S.W.2d 154, 157 (Tex. 1994). However, a trial court may not disregard a jury finding if the question attempts to submit a recognized claim but does so defectively. See Tichacek , 997 S.W.2d at 172 ; Spencer , 876 S.W.2d at 157. If a defective question is submitted over a proper objection, the proponent of the question is entitled to a new trial. See Spencer , 876 S.W.2d at 157 ; see also Borneman v. Steak & Ale of Tex., Inc. 22 S.W.3d 411, 413 (Tex. 2000) (per curiam) (holding that rendition of judgment was inappropriate when jury charge improperly submitted question on appellant's claim to jury, there was no indication the appellant was attempting to gain an advantage through submission of an improper charge, and the charge was not "so defective" that it warranted rendition of judgment).
Choudhri argues that Question 3 is immaterial because it conflicts with the 2010 assignment documents, which clearly and unequivocally state that they are effective upon execution and are not conditioned upon any other event. The Majority goes further, however, opining that Question 3 cannot be understood to inquire into whether Mokaram and Choudhri subsequently *621 agreed that the 2010 assignment would not be effective. The Majority's unnecessarily narrow interpretation of Question 3 denies effect to the jury's consideration of the evidence and its affirmative answer to that question. See First Fed. Sav. & Loan of Dallas v. Sharp , 359 S.W.2d 902, 903 (Tex. 1962) ("If the jury finding is ambiguous or unclear, the courts must try to interpret the finding so as to uphold the judgment.").
The Majority perceives drafting shortcomings in Question 3, such as the reference to an undefined "2010 assignment," the failure to specifically ask the jury whether Mokaram and Choudhri agreed to "rescind" the 2010 assignments, and the use of "not effective" rather than "no longer" effective. The Majority then concludes that "in the context of this case" the jury could not have understood that Question 3 inquired into whether a subsequent agreement was reached. The Majority fails to actually consider the context to which it refers.
During the presentation of Choudhri's case, and outside the presence of the jury, Mokaram specifically proposed submitting a question asking the jury about the existence of a subsequent oral agreement in support of his request for a declaratory judgment on the issue:
[Mokaram's counsel]: ... And what happened after [the 2010 transaction] was ... the parties agreed that the assignments were void or not effective, and that they were going to return the money. And the whole issue was, were they or were [they] not returning the money so that we have assignments that are not effective versus, you know, payment for a different transaction....
What we're going to ask the Court to do is submit a question to the jury that says, Did the parties agree-and if you want to put a time limitation in there that it was after the assignments, that's fine. But did the parties agree that the money would be returned and the assignments would be void or not effective or whatever word the Court deems appropriate to use.
That's not barred by parol evidence. It's a-it's another agreement reached after the assignments are already done.
The trial judge's response to the parties' arguments on the issue demonstrated her understanding that the Mokaram proposed a question inquiring into whether the parties made a subsequent oral agreement:
The Court: All right. It is likely that I will allow the submission on the post-agreement question, but I want to look more closely. I think it is covered in the pleadings.
At the charge conference, Choudhri objected to the submission of Question 3 on the grounds that it was actually an improper novation question, and his counsel submitted a proposed instruction on novation to accompany the question, which the trial court rejected. But Choudhri did not otherwise object to the form of Question 3.[1]
*622 Thus, the record reflects that both the trial court and Choudhri understood that Question 3 inquired into whether, after Latif reneged on selling his interests to Mokaram, Mokaram and Choudhri orally agreed that the 2010 assignment was no longer effective.
Additionally, during closing statements, Mokaram's counsel stressed that the case was about which party was telling the truth about their transactions with each other, including the 2010 transaction. Mokaram's counsel encouraged the jury to answer "yes" to Question 3 based on Mokaram's testimony that after Latif reneged, Mokaram and Choudhri agreed the assignments were void or not effective, and that Mokaram was going to give Choudhri's money back. Mokaram's counsel also acknowledged that there was no dispute that the 2010 assignment was valid, saying, "There isn't any question that you have assignments. Nobody said there wasn't, right?"[2]
Consequently, in the context of this case, the trial court, the parties, and ultimately the jury understood-based on the arguments and the evidence presented-that Question 3 inquired into whether, after Latif reneged on his offer to sell to Mokaram, Mokaram and Choudhri agreed that the 2010 assignments were no longer effective. Far from being immaterial, this question was central to Mokaram's case.
I would hold that Question 3 sufficiently submits a question inquiring into whether Mokaram and Choudhri subsequently agreed that the 2010 assignments were not effective, that some evidence supports the jury's affirmative answer to the question, and that the trial court erred in granting Choudhri's motion to disregard the jury's finding. See Quitta , 808 S.W.2d at 641-42 (holding that evidence of prior discussion concerning modification to written lease agreement corroborated and was some evidence to support jury's finding that subsequent oral modification existed). Alternatively, I would hold that, assuming Choudhri preserved error by a proper objection, Question 3 attempted to request a finding to support Mokaram's request for declaratory relief but did so defectively, and therefore remand for a new trial, rather than rendition, is appropriate. See Borneman , 22 S.W.3d at 413 ; Tichacek , 997 S.W.2d at 172 ; Spencer , 876 S.W.2d at 157-58. Because the Majority concludes otherwise, I respectfully dissent.
SUPPLEMENTAL MAJORITY OPINION
We issue this supplemental opinion to address cases cited in appellee Ali Choudhri's motion for rehearing. Finding no merit in that motion or in the motion for rehearing filed by appellants Osama Abdullatif and Ali Mokaram (collectively the "Latif Parties"), we deny these motions. These rulings render moot the Latif Parties' motion for reconsideration en banc.
Choudhri's Newly Cited Authority
In his motion for rehearing, Choudhri cites *623 The Atrium v. Kenwin Shops of Crockett, Inc. , a case from this court, for a holding that parties to a lease could ratify by their conduct a lease even after the lease had become "null and void" under a lease provision. See 666 S.W.2d 315, 317-18 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). In its brief analysis, the Atrium court cited no case in support of its conclusion. See id . We presume for argument's sake that the Atrium court held that parties to a lease can ratify by their conduct a lease even after the lease has become "null and void" under a lease provision using the plain, ordinary, and generally accepted meaning of the phrase "null and void." See id .
Even under this presumption, the Atrium court's holding does not bind this panel because the holding conflicts with Supreme Court of Texas precedent under which the plain, ordinary, and generally accepted meaning of the term "void" is "entirely null, not binding on any party, and not susceptible of ratification or confirmation." See Brazzel v. Murray , 481 S.W.2d 801, 803 (Tex. 1972) (relying on precedent in Murchison v. White , 54 Tex. 78, 81 (Tex. 1880) for the proposition that a void act is entirely null, not binding on either party, and not susceptible of ratification or confirmation); Rue v. Missouri Pac. Ry. Co. , 8 S.W. 533, 535 (Tex. 1888) (stating that "[n]o acts of ratification can validate or make effective that which is void" in a case involving a void lease or contract); Murchison v. White , 54 Tex. 78, 81 (Tex. 1880) (stating that "[a] void act is one entirely null within itself, not binding on either party, and which is not susceptible of ratification or confirmation. Its nullity cannot be waived."); Cummings v. Powell , 8 Tex. 80, 85 (Tex. 1852) (stating that "[a] void act ... is one which is entirely null, not binding on either party, and not susceptible of ratification; and a voidable act is one which is obligatory upon others until disaffirmed by the party with whom it originated and which may be subsequently ratified or confirmed"). No panel of this court is bound by a prior holding of another panel if, as with Atrium , the prior holding conflicts with an on-point precedent from the supreme court. See Glassman v. Goodfriend , 347 S.W.3d 772, 781 (Tex. App.-Houston [14th Dist.] 2011, pet. denied) (en banc). To the extent the statements in the cited cases were not necessary to the supreme court's disposition of the case, the high court made the statements deliberately and for future guidance in the conduct of litigation, so these statements constitute judicial dicta binding on this court. See Allstate County Mutual Ins. Co. v. Wootton , 494 S.W.3d 825, 834 (Tex. App.-Houston [14th Dist.] 2016, pet. denied). Thus, even if the Atrium court held that the contracting parties can ratify by their conduct a lease after the lease had become "null and void" under a lease provision using the plain, ordinary, and generally accepted meaning of that phrase, any such holding does not bind this court. See Brazzel , 481 S.W.2d at 803 ; Rue , 8 S.W. at 535 ; Murchison , 54 Tex. at 81 ; Cummings , 8 Tex. at 85 ; Glassman , 347 S.W.3d at 781 ; The Atrium , 666 S.W.2d at 317-18. Duty-bound to follow the supreme court's precedent, we conclude the Atrium case provides no basis for rehearing relief.
In his motion for rehearing, Choudhri also cites Humble Oil & Refining Company v. Clark for the proposition that a void instrument can be made valid by adoption, ratification, or confirmation. See 87 S.W.2d 471, 474 (Tex. 1935). The Clark case does not support this proposition. See id . In Clark , the supreme court presumed that a 1928 oil and gas lease was void. See id . at 472. The Clark court then examined whether a 1930 oil and gas lease was valid. See id . Except for a few changes, the language of the 1930 lease mirrored the language of the 1928 lease, including a *624 statement that the lease was made in 1928. See id . The lessors signed the second lease in 1930. See id . The supreme court determined that the terms of the 1930 lease were valid, even though one part of the lease incorrectly recited that it was made in 1928. See id . at 473-74. The high court concluded that the 1930 lease's use of the terms from the void 1928 lease did not make the 1930 lease void. See id . at 474. The Clark court discussed a fact pattern in which one instrument is void and a second instrument is then validly executed to effect the transfer that the void instrument failed to accomplish. See id . The Clark court indicated that, if the part of the first instrument that made the instrument void was not present in the later instrument, then the latter's use of the terms of the void instrument does not make the second instrument void or invalid. See id . The Clark court did not state that a void instrument can be made valid by adoption, ratification, or confirmation. See id .
We stated on original submission that if, after October 2010, Latif and Mokaram both approved an assignment of all of Mokaram's membership interest in Mokaram-Latif General, LLC to Choudhri, the proper course under the company agreement would have been to document this approval and have Mokaram execute another assignment document that would not be null and void ab initio . See Abdullatif v. Choudhri , No. 14-16-00116-CV, 2018 WL 1559995, at *14 (Tex. App.-Houston [14th Dist.] Mar. 30, 2018, no pet. h.). This statement is consistent with the Clark court's analysis. See Clark , 87 S.W.2d at 472-74. The Clark case provides no reason to depart from the analysis in our original opinion or to grant any relief on rehearing.
Conclusion
In sum, we conclude that the arguments in Choudhri's motion for rehearing and the arguments in the Latif Parties' motion for rehearing lack merit. Accordingly, we deny these motions. And, we dismiss as moot the Latif Parties' motion for reconsideration en banc.
(Justice Wise respectfully dissents to the Supplemental Majority Opinion for the reasons expressed in the Dissenting Opinion he filed in this case on March 30, 2018. Justice Wise would grant appellants' motion for rehearing).

At the charge conference, Choudhri also objected that Question 3 was not supported by the pleadings or the evidence. On appeal, however, Choudhri does not dispute that Mokaram's live pleading included a request for a declaratory judgment that after the assignments were signed by the parties, they agreed the assignments were "void and not effective" and that Mokaram would return the $750,000 to Choudhri. Further, contrary to Choudhri's suggestion on appeal, because Mokaram's submitted question tracks Pattern Jury Charge 101.1 on the existence of an agreement in connection with his request for declaratory relief, Mokaram was not required to submit accompanying performance or damages questions. See Lakeway , 585 S.W.2d at 662 (affirming judgment in favor of plaintiff who obtained a finding supported by evidence that the parties entered into a subsequent agreement to modify their prior written agreement). Nor was the question an improper novation question, as novation is an affirmative defense to a breach of contract claim, and Choudhri did not assert a breach of contract claim against Mokaram. See Superior Laminate & Supply, Inc. v. Formica Corp. , 93 S.W.3d 445, 448 (Tex. App.-Houston [14th Dist.] 2002, pet. denied) (explaining that novation is "the substitution of a new agreement in place of an existing agreement between the same parties" and is an affirmative defense to a breach of contract claim).

Likewise, at a hearing on the parties' post-trial motions, Mokaram's counsel reiterated that there was no dispute that the 2010 assignment was valid.