COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| IN THE MATTER OF R. D., A JUVENILE | § § § § § § | No. 08-07-00100-CV<br><br>Appeal from the<br><br>289th District Court<br><br>of Bexar County, Texas<br><br>(TC# 2006-JUV-03111) |

**O P I N I O N**

This is an appeal from an adjudication of engaging in the delinquent conduct of aggravated robbery. Appellant raises three issues challenging the legal and factual sufficiency of the evidence supporting the jury's deadly weapon finding and the factual sufficiency of the evidence in rejecting his affirmative defense of duress. We affirm.

R. D. was walking to the store when he met Richard Casarez. Casarez asked if R. D. knew where he could get some cocaine. He did not, but he knew where he could get some marijuana. R. D. agreed to go to Casarez's house where they smoked marijuana. Casarez's father came home and offered them beer, which they accepted. Casarez's father asked R. D. about his tattoos, and told him he was not supposed to have them. Casarez's father began to threaten R. D., and told him he had to do something to get into his gang since he already had the tattoos. Casarez's father told R. D. that if he did not do something for him, then he was going to hurt his family or R. D. R. D. was frightened by the threat to his family. Casarez had told R. D. that he had seen him around the neighborhood and knew where he lived. Casarez's father told

R. D. that he had been to jail, and he was in the Mexican Mafia. R. D. and Casarez along with Casarez's trained pit bull left the house. Casarez told him if he did not do what his father told him that something bad was going to happen. Before they left, they also retrieved a pellet gun from the backyard. R. D. knew the gun was not loaded. Casarez told R. D. they were going to go up to someone and try to get money.

Maria Gomez was walking back to her house when two boys told her to stop. At first, she did not realize they were talking to her, but then she turned around to see what they wanted. One of the boys asked her for money. She thought that they might set the dog on her if she did something. Ms. Gomez told them that she did not have any money. One of the boys told her that "he was not playing" to which she responded that she did not have anything on her because she did not have any pockets. Ms. Gomez turned around and starting walking away, and then the boy without the dog told her to stop, that he was not playing with her. When she turned around, she saw that he was pointing a gun at her. The boy continued to tell her that he wanted money from her. Ms. Gomez was scared, and thought he might shoot her. She turned around and started to walk away. The boy came behind her, and she felt the gun on the back of her neck. He, again, told her to stop and he was not playing. She turned around, grabbed the front of the gun, and pushed it away from her. The boy with the dog told her to take off her earrings, and she gave them to the boy with the gun. After giving them her earrings, she turned around, walked home, and called the police. The police arrived and asked her what happened and to describe the two boys. The officers took her to a location where they had two boys and asked if they were the ones who robbed her. It was the same two boys. Ms. Gomez identified R. D. as the boy with the gun at trial.

Officer Peter Baltes, of the San Antonio Police Department, testified for the State as to whether the gun used was a deadly weapon. Officer Baltes was told by R. D. that the gun was in his waistband. The weapon appeared to be a black semi-automatic pistol. Officer Baltes realized it was a pellet gun when he went to place the gun in his trunk to secure it. Officer Baltes' experience with firearms included qualifying with various types of weapons system in the Marine Corp and firing different types of firearms as a deputy sheriff. Officer Baltes testified that he was educated on the law in the State of Texas and was familiar with the definition of a deadly weapon under those laws. It was Officer Baltes' opinion that the gun was a deadly weapon. If the gun was placed to close to the human body, it would be capable of causing serious bodily injury or death, and its intended use could cause the same. On cross-examination, Officer Baltes stated that without pellets the gun would not be capable of causing serious bodily injury or death unless used as a club. In an unloaded state, it was not capable of being a deadly weapon. Officer Baltes did not test the gun to see if it functioned, nor did he know if the CO2 cartridge had any gas in it.

The jury found that Appellant had engaged in delinquent conduct of aggravated robbery. The jury sentenced him to commitment to the Texas Youth Commission with the possible transfer to the Institutional Division of the Texas Department of Criminal Justice for fifteen years.

In Issue One, Appellant argues the trial court erred in denying his motion for directed verdict because the evidence was legally insufficient to support the finding that R. D. used or exhibited a deadly weapon. An appellate challenge to the trial court's denial of a motion for a directed verdict is considered to be a challenge to the legal sufficiency of the evidence. *See Canales v. State*, 98 S.W.3d 690, 693 (Tex.Crim.App. 2003). In Issue Two, Appellant argues the

trial court erred in denying the motion for new trial because the evidence was factually insufficient to support the finding that R. D. used or exhibited a deadly weapon. In reviewing the legal and factual sufficiency of the evidence to support a deadly weapon finding, an appellate court uses the same standards used to review the sufficiency of the evidence to support a conviction. *Lee v. State*, 51 S.W.3d 365, 371 (Tex.App.--Austin 2001, no pet.). We review adjudications of delinquency in juvenile cases by applying the same standards applicable to sufficiency of the evidence challenges in criminal cases. *In re M.C.L.*, 110 S.W.3d 591, 594 (Tex.App.--Austin 2003, no pet.).

In a legal sufficiency challenge, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Crim.App. 2007). Evidence that is legally sufficient, can still be factually insufficient. *Id*. In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). Evidence is factually insufficient to support the verdict if it is clearly wrong or manifestly unjust, or the verdict is against the great weight and preponderance of the evidence. *Rollerson*, 227 S.W.3d at 724. Under both standards, the reviewing court must consider all of the evidence. *Id*. "The difference between the two standards is that the former requires the reviewing court to defer to the jury's credibility and weight determinations while the latter permits the reviewing court to substitute its judgment for the jury's on these question 'albeit to a very limited degree.'" *Rollerson*, 227 S.W.3d at 724, *quoting Watson v. State*, 204 S.W.3d 404, 416-17 (Tex.Crim.App. 2006). There is little actual difference between the two

standards of review. *Id*.

A person commits aggravated robbery if he commits robbery as defined in Section 29.02 of the Penal Code and uses or exhibits a deadly weapon. TEX.PEN.CODE ANN. § 29.03(a)(2) (Vernon 2003). The jury charge defined a deadly weapon as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *See* TEX.PEN.CODE ANN. § 1.07(17)(B)(Vernon Supp. 2008).

R. D. testified that he knew the gun was not loaded when they got it from the backyard. After Ms. Gomez, tried walking away, R. D. told her he was "not playing" and was pointing the gun at her. He repeated his request for money. Ms. Gomez stated she did not have any, and tried to walk away again. She was scared, and thought he might shoot her. R. D. came up behind her and placed the gun to the back of her neck, and said he was not playing.

Officer Baltes testified that it was a pellet gun that looked like a semi-automatic weapon. He gave his opinion that it was a deadly weapon, and was capable of causing serious bodily injury or death. Officer Baltes stated that in an unloaded state, it is not a deadly weapon unless used as a club, and he did not test the gun to see if it functioned.

In *Adame v. State*, the Court of Criminal Appeals found that evidence showing the appellant displayed the BB gun, and the gun was capable of causing serious bodily injury if pointed and fired at someone was sufficient to support the jury's deadly weapon finding. *Id*., 69 S.W.3d 581, 582 (Tex.Crim.App. 2002). The Court held that whether the BB gun was loaded or unloaded is not significant in the analysis because the issue is whether the gun was capable of causing seriously bodily injury. *Adame*, 69 S.W.3d at 582, *citing McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000)("an object is a deadly weapon if the actor intends a use of the

object in which it would be capable of causing death or serious bodily injury"). The court held that it is not necessary to place an additional evidentiary burden on the State to prove that a BB gun was loaded at the time of the commission of the offense, but rather the State only must show that the weapon used was capable of causing serious bodily injury or death in its use or intended use. *Adame*, 69 S.W.3d at 582. With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding. *Id*. While R. D. testified that the gun was not loaded, the jury is the sole judge of the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). The jury was free to disbelieve this self-serving statement. The fact that the gun was found without pellets is ambiguous evidence. Appellant could have unloaded the gun after walking away from the robbery. The fact that he pointed the gun at Ms. Gomez, placed it against the back of her neck, and stated that he "was not playing" allowed the jury to infer that the gun was loaded. *See Delgado v. State*, 986 S.W.2d 306, 308 (Tex.App.--Austin 1999, no pet.). Accordingly, the evidence is legally sufficient to support the finding that Appellant used or exhibited a deadly weapon, and the verdict is neither clearly wrong or manifestly unjust nor against the great weight and preponderance of the evidence. Issues One and Two are overruled.

In Issue Three, Appellant argues the trial court erred in denying the motion for new trial because the evidence was factually insufficient to support the jury's rejection of R. D.'s affirmative defense of duress. As a transfer case, we must apply the precedent of the transferor court. TEX.R.APP.P. 41.3. The Rules of Civil Procedure govern juvenile proceedings unless there is a conflict within the Texas Family Code. TEX.FAM.CODE ANN. § 51.17(a)(Vernon 2008); *In re M.P.*, 126 S.W.3d 228, 230 (Tex.App.--San Antonio 2003, no pet.). Rule 324

requires a motion for new trial as a prerequisite for challenging the factual sufficiency at trial. TEX.R.CIV.P. 324(b)(2). While R. D. did file a motion for new trial, it only challenged the sufficiency of the evidence of the deadly weapon finding. The motion did not challenge the jury's rejection of R. D.'s affirmative defense. As such, the issue was not preserved for review. *See In re L.M.M.*, No. 04-04-00055-CV, 2004 WL 2289731 at *1 (Tex.App.--San Antonio Oct. 13, 2004, no pet.)(mem. op., not designated for publication). If the case had originated in the Eighth Judicial District, we would have reviewed the issue since this Court has held that filing a motion for new trial is not required to raise a factual sufficiency issue on appeal in a juvenile proceeding. *See In re J.L.H.*, 58 S.W.3d 242, 246 (Tex.App.--El Paso 2001, no pet.). Appellant's Issue Three is overruled.

Having overruled all of Appellant's issues, we affirm the adjudication of the trial court.

March 12, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J. (Not Participating)