

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EDGEMERE LOOP, 375, a TEXAS LIMITED LIABILITY COMPANY, | § | No. 08-24-00092-CV |
| | § | Appeal from the |
| Appellant, | | |
| | § | 205th District Court |
| v. | | |
| | § | of El Paso County, Texas |
| LOOKMAN LAWAL, M.D., and SOUTHWESTERN CARDIAC ARRHYTHMIA INSTITUTE, P.A., a TEXAS PROFESSIONAL ASSOCIATION, | § | (TC# 2020DCV2771) |
| Appellees. | | |

**MEMORANDUM OPINION**

This appeal involves a landlord-tenant dispute and poses the question of who is liable for the fall-out when a landlord tells its tenant to move out before the end of the lease and the tenant does. Appellant Edgemere Loop 375, LLC notified its tenants, Appellees Lookman Lawal and Southwestern Cardiac Arrhythmia Institute (collectively, Lawal), that it was selling the office space they rented and they would have to move out. Following that letter, Edgemere refused to communicate with Lawal about the lease termination, prompting Lawal to find other property for his cardiology practice. Although Edgemere initially demanded that Lawal vacate the office, Edgemere filed the underlying lawsuit after Lawal did just that. Edgemere appeals the judgment against it. We affirm in part and reverse in part.

# I. FACTUAL BACKGROUND

Lawal is a cardiologist and owns his own practice, Southwestern Cardiac Arrythmia Institute. In October 2015, Lawal rented office space in El Paso from Edgemere, through its managing member Javier Reyes. The lease expired in 2018, and the parties disagree about when the renewed three-year lease was signed. Lawal says that he met with Reyes on October 10, 2018, and signed the lease that day. Reyes testified that Lawal took the lease home to review it and that Lawal did not return a signed copy until after he gave Lawal a notice to vacate. Regardless of when the lease was signed or returned, Lawal continued to pay rent every month at the increased amount under the new lease through February 2020, when he moved out of the property.

In November 2018, Reyes began negotiations with another doctor, Dr. Granados, to sell the property to him. In early January 2019, Reyes also met with Lawal to discuss selling the building to him and contracts for sale were sent to Lawal to review on January 8 and 9. However, the following day, on January 10, Reyes decided to sell to Granados. According to Reyes, he did not believe any lease was in effect at this time because Lawal had not returned it with his signature. On January 11, 2019, Reyes sent a letter to Lawal that revoked the offer to sell and terminated the lease. Because the correspondence between the parties is at the heart of their dispute, we find it necessary to quote it at length.

In the January 11 letter, Reyes stated:

> I am writing to inform you that although we have had discussions with regards to your purchase of the property . . ., I am not going to continue with the execution of a contract to sell that property to you. It is not my intent to give you the impression that I am trying to renegotiate or engage in further negotiations of any sort. I am selling the property, but not to you.

> The party to whom I will sell the property is intending to close and take possession of the property as of June 1, 2019 and a part of our contract agreement is that the property will be vacant by that date.

> Please accept this letter as my notice to you that you must vacate the property prior to June 1, 2019.

One week later, on January 18, 2019, Lawal responded. He did not contest the termination of the lease but asked for additional time to move. He wrote:

> Please be apprised that we recently signed a 3-year contract on 10/10/2018, terminating in 2021.

> .    .    .

> Please be advised that the June 1st date given to vacate the . . . property is not feasible. I have been renting the property for 3 years and I currently have close to seven thousand patients in the area. Such a drastic move at such a short notice would jeopardize my patients' health care and put several patients at risk. I would like you to consider extending my vacation date to the end of December 2019. This would give me enough time to find a new office space, inform my patients and insurance companies about the impending relocation and ensure a smooth transition.

Reyes did not respond to the letter either in writing or verbally. On January 31, 2019, Lawal sent a letter to Suzi Phillips with the title company involved in the sale of the property advising her that he and Edgemere had a valid lease, which he enclosed, that did not expire until May 31, 2021. When Lawal received no response to that letter either, he retained an attorney.

On March 6, 2019, Lawal's attorney sent a letter to Reyes with a copy of the lease that advised as follows:

> Please note that it is Dr. Lawal's good faith and lawful assertion that the attached Lease, executed on October 10, 2018 . . . remains enforceable and in effect through **May 31, 2021**.

Reyes claims that the first time he received the lease with Lawal's signature was sometime between the January 31 and March 6 letter, and that once he was aware that the lease was in effect, he contacted Granados and the title company and canceled the sale. But, again, Reyes did not respond to Lawal's letter or otherwise let him know that he canceled the contract with Granados and retracted the notice to vacate.

3

With the vacate date looming, and no word from Edgemere about whether it intended honor the lease or not, Lawal decided to find another office. On May 29, 2019, Lawal's attorney sent another letter to Reyes which summarized the prior correspondence and gave Reyes notice that Lawal would move out of the property before March 1, 2020:

> . . . [W]e write to inform you that, as a result of your prior demand letter dated January 11, 2019…, Dr. Lawal, out of an abundance of caution, was forced to timely seek the availability of renting or purchasing another property to where his medical practice could relocate (involving his provision of medical services to approximately 7,000 patients in the El Paso area).
>
> .     .     .
>
> You are hereby notified that Dr. Lawal has acquired a new office space at another property and is planning to move out of his current office an into that new office by no later than February 29, 2020. Under these circumstances, please acknowledge, in writing, that Edgemere Loop, 375, L.P., shall agree to the parties' mutual termination of the subject Renewal Lease Agreement, effective on February 29, 2020, at 11:59 (Mountain Time), with no further obligations owed by either party under said lease, thereafter. Based upon the circumstances that you originally set in motion on January 11, 2019, Dr. Lawal was justifiably and reasonably forced to take this alternative action to protect his and his medical patients' interests….We respectfully believe that this timely notice provides Edgemere Loop, 375, L.P., with a reasonable amount of time in which to place the subject office space on the market for rental or sale, and have it rented or purchased by a third party, who could move into the subject office as early as March 1, 2020.

To summarize, after receiving the notice to vacate, Lawal sent three letters to Reyes and one to the title company. After telling him to move out by June 1, 2019, Reyes did not respond to any of the letters or communicate with Lawal at all. Reyes gave various reasons for the lack of communication. In his deposition, he testified that he did not respond to the letters simply because he did not want to. At trial, Reyes gave conflicting explanations: he said that he did not respond because he viewed the letters as harassment, because he thought there was *not* a lease, and because there *was* a lease.

As Lawal said he would in his May 29, letter, Lawal completely vacated the property before the end of February 2020 and notified Edgemere by letter. On March 2, 2020, Lawal's attorney

4

requested the return of Lawal's security deposit. Edgemere did not return the security deposit, but instead applied it to March's rent. Edgemere alleged that once Lawal moved out, he was unable to find a renter or buyer until November 2020.

## II. PROCEDURAL BACKGROUND

Edgemere filed suit against Lawal and Southwestern for breach of contract. It sought rent for the nine months between Lawal's vacating the property and the sale of the property, late fees under the lease (10% per month plus $50 a day), and attorney's fees.

Lawal responded by filing counterclaims for constructive eviction, breach of implied warranty of quiet use and enjoyment, and breach of contract for failure to return the security deposit. He requested damages for lost profits, expenses of setting up his new office, the return of his security deposit, and attorney's fees.

After a four-day trial, a jury found for Lawal on his claims and against Edgemere on its. It found that the parties agreed to and signed the renewed lease agreement on October 10, 2018, that Edgemere failed to comply with the agreement, that Lawal did not fail to comply with the lease, and that Edgemere constructively evicted Lawal. Finally, the jury found that the amounts that would compensate Lawal for Edgemere's breaches were $36,791.80 for moving expenses, $42,000 in lost profits, $5000 for his retained security deposit, and $67,000 in attorney's fees. The trial court entered a final judgment awarding these amounts as damages and attorney's fees, plus pre-judgment interest and court costs.

On appeal, Edgemere challenges the legal and factual sufficiency of the evidence to support the jury's findings on the breach of contract and breach of implied warranty claims (issue one); Lawal's constructive eviction claim (issue two); and award of damages (issue three). In his fourth issue, Edgemere argues that the attorneys' fees award against it is statutorily prohibited or, alternatively, was not supported by the evidence. In its fifth issue, Edgemere argues that the trial

5

court erred in denying its request for jury instructions about Lawal's continued performance after Edgemere's alleged breach and justifications for retaining a security deposit. And in its sixth issue, it contends that the trial court erred in overruling its motion for directed verdict. To address Edgemere's issues, we discuss each cause of action and the appellate issues that pertain to it.

## III. STANDARD OF REVIEW

### A. Sufficiency of the evidence and denial of directed verdict

Discussed in detail below, Edgemere contends that the jury's findings on both its claims and Lawal's claims are not supported by legally and factually sufficient evidence. Edgemere also challenges the trial court's denial of a directed verdict, for which the standard of review mirrors that of a legal sufficiency challenge. *In re R.D.*, 304 S.W.3d 424, 427 (Tex. App.—El Paso 2009), *review granted, judgment rev'd on other grounds*, 304 S.W.3d 368 (Tex. 2010). The correct standard depends on which party had the burden of proof at trial. In a legal sufficiency review of a finding on which the appellant did not have the burden of proof, we must affirm a verdict unless (1) there is "a complete absence of evidence of a vital fact," (2) "the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact," (3) there is "no more than a mere scintilla" of evidence proving a vital fact; or (4) the evidence conclusively establishes the opposite proposition of a plaintiff's proffered vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In reviewing the evidence, we "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. When the appellant did have the burden of proof at trial, he must show that, as a matter of law, he conclusively established each element of his cause of action. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

In a factual sufficiency review, we "consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id*. at 242.

## B. Jury charge

Edgemere argues that the trial court erred in refusing its requested jury instructions. We review a trial court's rejection of a requested instruction for an abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). "When a trial court refuses to submit a requested instruction on an issue raised by the pleadings and evidence, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict." *Id*. Even if the omission of an instruction is error, it is only reversible if it was harmful and "probably caused the rendition of an improper judgment." *Id.*; Tex. R. App. 44.1(1).

## IV. ANALYSIS

### A. Lawal's claims regarding breach of implied warranty and constructive eviction (issues two and three and portions of issues one and six)

The jury found that Edgemere constructively evicted Lawal. Although asserted as two separate causes of action, breach of implied warranty of quiet use and enjoyment and constructive eviction are identical.[1] The elements of both are:

> (1) an intention on the part of the landlord that the tenant shall no longer use or enjoy the premises; (2) a material act or omission by the landlord that substantially interferes with the use and enjoyment of the premises; (3) the act must permanently deprive the tenant of the use and enjoyment of the premises; and (4) the tenant must abandon the premises within a reasonable time after the commission of the act.

---

[1] The Texas Supreme Court recently noted that while courts of appeals have recognized constructive eviction as a cause of action, it has not yet done so, nor has it addressed the relationship between constructive eviction and breach of the covenant of quiet enjoyment. *Westwood Motorcars, LLC v. Virtuolotry, LLC*, 689 S.W.3d 879, 882 (Tex. 2024).

7

*Williamson v. Howard*, 554 S.W.3d 59, 69 (Tex. App.—El Paso 2018, no pet.); *Bagby 3015, LLC v. Bagby House, LLC*, 674 S.W.3d 609, 620–21 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("The elements of a claim for breach of the warranty or covenant of quiet enjoyment are the same as the elements of a constructive-eviction claim[.]"). Edgemere contends that there was not sufficient evidence of any element, but we focus on the second element, substantial interference, which is dispositive.

Lawal contends that Reyes's January 11 letter giving him notice to vacate substantially interfered with his use of the property. He testified that he could not use the property to its full extent because after he received the notice, he was "confused" and "panicked" and that it caused a "substantial disruption" in his practice because he could not focus on his patients. Because he was distracted and worried, Lawal said, he could not see his usual number of patients a day and had to cancel complex surgical procedures.

A notice to vacate by itself does not substantially interfere with a tenant's use and enjoyment of the premises, even when the tenant actually moves out. *Rust v. Eastex Oil Co., Inc.*, 511 S.W.2d 358, 361 (Tex. App.—Texarkana 1974, no writ); *Fabrique, Inc. v. Corman*, 796 S.W.2d 790, 792 (Tex. App.—Dallas 1990), writ denied, 806 S.W.2d 801 (Tex. 1991); *Quitta v. Fossati*, 808 S.W.2d 636, 643–44 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied); *Michaux v. Koebig*, 555 S.W.2d 171, 177 (Tex. App.—Austin 1977, no writ); *Arredondo v. Vill. on the Lake, LTD*, 681 S.W.3d 853, 866 (Tex. App.—Houston [14th Dist.] 2023, no pet.). Lawal recognizes this body of caselaw but argues that it was not only Edgemere's notice to vacate, but also its failure to respond to Lawal's letters and its continued silence that substantially interfered with the use of the property.

In cases finding a constructive eviction, however, the landlord's actions or omissions made it difficult for the tenant to *physically* and *literally* use the premises. For example, courts have found that a tenant was constructively evicted in the following circumstances:

- Landlord changed the locks. *Lazell v. Stone*, 123 S.W.3d 6, 12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

- To remodel its building, landlord erected a barricade that made it difficult for the public to see or enter the café, trash was dumped in front of the café causing the inside to become dusty, electricity was "intermittently interrupted;" and the café's sign was removed. *Richker v. Georgandis*, 323 S.W.2d 90, 92 (Tex. App.—Houston 1959, writ ref'd n.r.e.).

- Landlord's construction of a new building deprived tenant who operated an auto-repair shop of parking needed to store the vehicles he was working on. *Briargrove Shopping Ctr. Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 334–35 (Tex. App.—Houston [1st Dist.] 1982, no writ).

- Landlord took no action to demand that protesters, who prevented patients' access to its tenant's abortion clinic, leave the property *Fid. Mut. Life Ins. Co. v. Robert P. Kaminsky, M.D., P.A.*, 768 S.W.2d 818, 821 (Tex. App.—Houston [14th Dist.] 1989, no writ)

- Landlord allowed delivery trucks to park near commercial tenant's entrance and placed trash containers close to the entrance causing trash to blow into the business. *Steinberg v. Med. Equip. Rental Services, Inc.*, 505 S.W.2d 692, 697 (Tex. App.—Dallas 1974, no writ).

Lawal agreed that Edgemere did not lock him out, physically block access to the building, or turn off electricity. Edgemere's silence, while certainly not commendable or a good business practice, did not physically prevent Lawal or his patients from using the building.

Nor did Lawal's understandable worry and anxiety amount to the type of interference that a constructive eviction claim can remedy. *Arredondo*, 681 S.W.3d at 866 ("Although the Village's

9

warnings and notifications about the noise complaints upset Arredondo, this does not create a fact issue showing an intention or a material act by the landlord substantially interfering with her use of the property.").

We hold that there was no evidence of a substantial interference with Lawal's use and enjoyment of the property. We therefore sustain Edgemere's issue two and the portions of issues one and six that pertain to the breach of implied warranty and constructive eviction. We reverse the verdict for constructive eviction and render judgment that Lawal take nothing on that claim. Because of our holding, we do not reach Edgemere's third issue that the damages are not supported by sufficient evidence.

**B. Edgemere's claim of breach of contract (portions of issues one and five)**

**(1) Issue One: Sufficiency of the evidence**

Edgemere claimed that Lawal breached the lease agreement by moving out before the end of the lease term. The jury was asked, "Did Lookman Lawal, M.D. and Southwestern Cardiac Arrhythmia Institute, P.A. fail to comply with the agreement." They answered "no." Later questions in the charge asked which party breached the agreement first and whether their non-compliance was excused. But those questions were conditioned on a finding that both parties breached the agreement and were therefore left unanswered.

Edgemere's issue as presented on appeal is that there is insufficient evidence to support the jury's finding that Lawal did not fail to comply with the lease agreement (phrased differently, that there was insufficient evidence that Lawal complied with the agreement). Edgemere argues that Lawal's breach of the lease was not excused because Lawal continued to perform under the agreement that for more than a year after Edgemere sent the notice to vacate by remaining in the property and paying rent. *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982) ("A

10

party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part.").

Edgemere's argument therefore goes to the question unanswered by the jury: whether Lawal *was excused* from complying with the lease. Edgemere's arguments fail to address the finding of the jury that Lawal did not breach the lease to begin with. "[A] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Because Edgemere failed to make an argument challenging the jury's finding that Lawal complied with the lease, it has waived this issue. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018). We overrule the portion of Edgemere's first issue regarding Lawal's compliance with the agreement.

Edgemere makes this argument again in its sixth issue, that the trial court erred in denying its motion for directed verdict on its claim that Lawal breached the lease agreement. It asserts that the evidence "fails to constitute more than a mere scintilla to prove [Lawal's] . . . breach of contract claim." This misstates the burden of proof and standard of review. Lawal's continued performance under a lease relates to *Edgemere's* claim that Lawal breached the contract. In Edgemere's motion for directed verdict on its own claim, Lawal did not have the burden of producing more than a scintilla of evidence. As stated above, when a party moves for directed verdict on a claim for which it has the burden of proof, it must show that the evidence conclusively establishes all the elements required for that cause of action.

The evidence does not conclusively establish that Lawal breached the lease agreement or that he continued performance of the lease after Edgemere's breach. Although we hold that the notice to vacate did not constructively evict Lawal, that does not mean that Edgemere could recover damages when Lawal did the very thing it told him to do. "One who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent

11

position and thereby cause loss or injury to the other." *Fabrique*, 796 S.W.2d at 792; *Moreau v. Oppenheim*, 663 F.2d 1300, 1309 (5th Cir. 1981). In any event, on May 29, 2019, after Edgemere received Lawal's letters and refused to communicate with him, Lawal did not continue to perform the lease; instead, he informed Edgemere that it would be moving out before March 1, 2020.[2]

### (2) Issue Five: Jury charge error

Edgemere also argues in its fifth issue that the trial court erred by refusing to include a jury instruction on continued performance. Its proposed jury charge included questions about whether Lawal treated the lease as continuing and whether his termination of the lease was excused. Under the proposed charge, the jury would have been instructed that "[a] party who elects to treat the contract as continuing after a material breach by the other party deprives itself of any excuse for ceasing performance on its own part."

Even if it was error to refuse to include this instruction, a question we need not reach, it is not reversible error unless it was harmful because it "probably caused the rendition of an improper judgment" or "probably prevented the petitioner from properly presenting the case to the appellate courts." Tex. R. App. P. 44.1(a); *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). As discussed above, continued performance deprives a party of using another party's breach of an agreement to excuse their own breach. Whether Lawal continued performing under the agreement (and therefore whether its own breach was excused) does not become a relevant question unless and until Lawal is found to have breached the agreement in the first place. The jury found that it did not. The failure to include instructions with a question that the jury did not even have to answer was not harmful. We overrule this part of Edgemere's fifth issue.

---

[2] Had Edgemere responded to Lawal's letters and retracted its notice to vacate, our holding might be different. But the last communication that Lawal received from Edgemere terminated the lease. It cannot now claim that Lawal wrongfully terminated the lease.

### C. Failure to return security deposit (portions of issues 1 and 5)

#### (1) Issue One: Sufficiency of the evidence

After Lawal left the property, he requested the return of his security deposit. Edgemere agrees that it refused to return it but argues that it was justified in retaining it to cover rent after Lawal moved out. Edgemere challenges the legal and factual sufficiency of the jury's finding that it was not excused from returning the security deposit under the terms of the lease agreement.

Any refund to which a commercial tenant is entitled must be paid within 60 days of the date the tenant surrenders the premises and provides notice to the landlord of his new address.[3] Tex. Prop. Code Ann. § 93.005. The landlord is allowed to keep all or part of a security deposit "for which the tenant is legally liable under the lease or damages and charges that result from a breach of a lease." *Id*. at § 93.006(a). But if a landlord retains any part of the deposit, the landlord must provide a "written description and itemized list of all deductions."[4] *Id.* at §93.006(c). If the landlord does not either return the deposit or provide a description and itemized list of the deductions, he is presumed to have acted in bad faith and he forfeits his right to withhold any portion of the deposit. *Id*. §93.011. To rebut this presumption, a landlord can rely on evidence that it had a reason to believe he could retain the deposit and factors such as the following:

> (1) the landlord is an amateur lessor because the residence is his only rental property; (2) the landlord had no knowledge of the requirement to submit an itemized list of all deductions from the security deposit; (3) extensive damage was done to the residence; (4) the landlord attempted to do some of the repairs himself to save money; or (5) the landlord had a reasonable excuse for the delay, e.g., he was on vacation.

---

[3] The lease in this case actually shortens the time to return the deposit to 30 days after the termination of the lease.

[4] The only exception to this rule is when the tenant owes an uncontested amount of rent at the time he surrenders the premises. Tex. Prop. Code Ann. §93.006(c). Edgemere does not claim that Lawal owed rent at the time he left; his claim is for rent owed after he moved.

*Zhang v. Capital Plastic & Bags, Inc.*, 587 S.W.3d 82, 94–95 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (quoting *Pulley v. Milberger*,198 S.W.3d 418, 430–31 (Tex. App.—Dallas 2006, pet. denied).

By finding that Lawal complied with the lease, the jury implicitly rejected Edgemere's argument that it was entitled to retain the security deposit for rent owed after Lawal moved out.[5] However, even if Lawal did continue to owe rent after he moved, Edgemere's failure to provide Lawal with the required written description of why it retained the security deposit triggered the presumption that it acted in bad faith. Edgemere therefore had to not only show that it had legal grounds for retaining the deposit, but also rebut the presumption that he acted in bad faith. Edgemere makes no argument and cites to no evidence in the record that rebuts the presumption of bad faith by explaining why it did not provide the required written description.[6] We hold that the jury's verdict that Edgemere was not excused from refunding the security deposit is supported by legally sufficient evidence because there is more than a scintilla of evidence both that Lawal did not owe rent after it moved out and that Edgemere forfeited any right it had to retain the deposit. In addition, considering all the evidence, the findings are not "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Dow Chem. Co.*, 46 S.W.3d at 242. We overrule the portion of Edgemere's issue one regarding the security deposit.

**(2) Issue Five: Jury charge error**

Edgemere also argues that the trial court erred in refusing to include the following proposed instructions about retaining security deposits in the jury charge:

---

[5] At trial, Edgemere argued that another reason he retained the deposit is that Lawal damaged the floors, and it cost more than $5000 to repair. It did not produce any evidence of these costs, and it abandons this argument on appeal.

[6] For example, Edgemere did not argue that he was an amateur landlord who would not have knowledge of the laws related to security deposits. In fact, he testified that he was a real estate investor who mostly rents commercial and medical offices.

14

1.  Before returning a security deposit, a landlord may deduct from the deposit damages and charges for which the tenant is legally liable under the lease for damages and charges that result from a breach of the lease.

2.  The landlord is not required to give the tenant a description and itemized list of deductions if: the tenant owes rent when the tenant surrenders possession of the premises; and no controversy exists concerning the amount of rent owed.

.        .        .

3.  The landlord has the burden to show that the retention of any portion of the security deposit was reasonable.

4.  Evidence that a landlord had reason to believe he was entitled to retain a security deposit to recover reasonable damages is sufficient to rebut the presumption of bad faith created by the Texas Property Code for failure to return the deposit or provide a written description of damages and list of deductions within 60 days after the tenant surrenders possession.

5.  A landlord's retention of the security deposit may be reasonable if (1) the tenant is legally liable under the lease or as a result of breaching the lease; (2) the damages did not exist before the tenant leased the premises; or (3) damages or charges are equal to or in excess of the security deposit or the amount deducted from the security deposit.

First, these instructions are deficient in two ways important to this case. They do not instruct the jury that the landlord must provide a written description of the amounts withheld or that the landlord forfeits the right to retain the security deposit if it does not provide that description. Tex. Prop. Code Ann. § 93.006(c), .011(b). It is not an abuse of discretion to refuse to include incomplete or incorrect instructions. *S---- C---- v. State*, 715 S.W.2d 379, 385 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.); *Swearingen v. Brown*, 195 S.W.2d 724, 729 (Tex. App.—Beaumont 1946, writ ref'd n.r.e.).

Second, even if the instruction should have been included in the charge, its exclusion did not "probably cause the rendition of an improper judgment." Tex. R. App. 44.1(a)(1). The

15

instructions are only necessary if the jury agreed that Lawal was "legally liable under the lease for damages and charges." Tex. Prop. Code Ann. §93.006(a). Because the jury found that Lawal did not breach the agreement by moving out early, it could not have also found that Lawal continued to owe rent for which the deposit could be used. In other words, because the excluded instructions rely on a premise–that Lawal continued to owe rent–that the jury rejected, the trial court's refusal of the proposed instruction was not harmful. We overrule the portion of Edgemere's fifth issue related to the security deposit.

### D.     Attorney's fees (issue four)

The jury found that Lawal incurred attorney's fees in the amount of $67,000 and the trial court entered a judgment for that amount. Edgemere challenges the attorney fee award on several grounds.[7] However, in light of our holding reversing the verdict for Lawal on his constructive eviction/breach of implied warranty claims, we must also reverse the award related to those claims.

Nonetheless, Lawal is entitled to attorney's fees on the claim we affirm–the wrongful retention of his security deposit. Tex. Prop. Code Ann. §93.011. Lawal's attorney testified that he incurred a total of $67,000 in fees until the date of trial, but he did not provide any evidence about how much of that amount was attributable to the security deposit claim. Lawal's attorney's testimony was only about segregation of fees between the constructive eviction and breach of implied warranty claims:

> Q: The only question I have for you, Mr. Almanzan, is have you segregated your attorneys' fees for the construction eviction cause of action?
>
> A: I did not do so because they are inextricably interwoven with the breach of contract causes of action. You can't separate them. They overlap.
>
> Q: So you're saying the breach of contract for return of deposit is so inextricably intertwined with the construction eviction lawsuit?

---

[7] Edgemere argues that the award is not authorized under § 38.001 of the Texas Civil Practices and Remedies Code because it is a limited liability company; that attorney's fees are not allowed for torts; that the lease did not provide for attorney's fees; and that fees are improper because Lawal did not segregate its fees.

16

A:    No, sir. That's not what I said. I said the breaches of contract–there are two breaches of contract. There's a breach of contract for the failure to return the security deposit, and there's a breach of contract for the implied warranty of use and enjoyment of the premises. Those are two different breaches of contract.

    And so the breach of contract as to the implied warranty of use and enjoyment of the premises clearly overlaps with the constructive elements of the case. That is what is inextricably intertwined.

We agree that the constructive eviction and breach of implied warranty claims cannot be segregated. As explained above, both causes of action have the same elements and so necessarily rely on the same facts. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006) (stating that "when discrete legal services advance both a recoverable and unrecoverable claim . . . they are so intertwined that they need not be segregated.")). But a claim that a security deposit was wrongfully and in bad faith withheld does not have those same elements or rely on the same facts. We sustain Edgemere's fourth issue. In this circumstance, we are required to remand to the trial court for a retrial on attorney's fees. *Chapa*, 212 S.W.3d at 314.

## V.  Conclusion

We reverse the judgment in favor of Lawal on his claims for constructive eviction and breach of implied warranty and we render judgment that he take nothing on those claims. We affirm the judgment against Edgemere on its breach of contract claims and for Lawal for his security deposit claims. Finally, we remand for a new trial on attorney's fees.

MARIA SALAS MENDOZA, Chief Justice

May 27, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

17